MOODY ET AL. V. DRYDEN ET AL.

1. **Deed:** UNAUTHORIZED DELIVERY: PRIOR MORTGAGE: SUBSEQUENT
   MECHANIC'S LIEN. D., after executing the mortgage in question,
   which, however, was not recorded till some months later, entered into
   a negotiation to sell the land to F., who lived at another town, and who
   had no knowledge of the mortgage. F. visited the place where the
   land was, and the parties employed a notary to draw the necessary
   papers. F. then and there executed notes for the purchase-money, and
   left them with the notary. He was also to execute a mortgage on the
   property as security, but he did not do so at that time. Three days
   later a deed was acknowledged by D. and left with the notary. This
   deed was never delivered to F., and there was no evidence that it was to
   be delivered until the mortgage to secure the notes was executed, which
   was never done, but the deed was somehow placed of record, but not by
   authority of D. or F. In the meantime, and before the mortgage in
   question was recorded, and without actual notice of it, B. & Co. began
   to furnish lumber, under contract with F., for a building on the property,
   and they now claim a mechanic's lien superior to the mortgage. *Held*
   that B. & Co. acquired no lien whatever, as against the mortgagee,
   because their contract was with F., who had no title, the deed to him
   never having been delivered.

2. **Evidence:** TRANSACTION WITH DECEDENT: OBJECTION TOO LATE.
   It is too late on appeal to object for the first time to evidence of personal
   transactions with one deceased, although such evidence might have
   been excluded as incompetent had objection been raised at the proper
   time on the trial below.

*Appeal from Jasper Circuit Court*—HON. GEO. W. CROZIER,
*Judge.*

SATURDAY, OCTOBER 8.

THE plaintiff J. W. Moody brought an action against the
defendant W. W. Dryden and others to foreclose a mortgage
upon an undivided half of certain mill property. After-
wards other actions were consolidated with it. The Oskaloosa
National Bank intervened, as claiming to hold as collateral
the notes secured by the Moody mortgage. G. H. Barbour
& Co. claim a mechanic's lien upon the premises as para-
mount to the Moody mortgage, and as paramount to certain
other alleged mechanic's liens. The court granted a fore-

closure of the Moody mortgage, and decreed the lien of Barbour & Co. to be inferior to the mortgage, and, as to a part of the property, inferior to the other liens. They appeal.

*Kerr & McElroy*, for appellants.

*Meredith & Ogg*, for other mechanic's lien-holders, appellees.

*Winslow & Varnum*, for Oskaloosa National Bank, appellee.

ADAMS, CH. J.—In August, 1884, the mill property in question was owned by one Heston and one Dryden; each owning an undivided half. About the fifteenth day of that month Heston sold his undivided half to D. P. Clark, and Dryden his undivided half to J. H. Fish. Prior to that time Dryden had executed to Moody, upon his half, the mortgage now sought to be foreclosed; but the same had not been recorded at the time of the sale to Fish, and was not recorded until September 10, 1884. In the meantime Barbour & Co., in pursuance of a contract with Fish, had commenced furnishing lumber for the erection of a new mill which was to be built by him and Clark as partners. The lien which they are attempting to establish is for lumber. They claim that their lien is paramount to the Moody mortgage, on the ground that they had no actual knowledge of it at any time while they were furnishing the lumber, and no constructive notice of it by reason of the recording until they had commenced furnishing the lumber, and their lien had attached. The Oskaloosa National Bank, while admitting a verbal contract of sale by Dryden to Fish, deny the allegation of Barbour & Co. that he became the owner; and, in argument, the counsel for the bank insist that the contract was never completed, and that the title to Fish never passed. So far as the undivided half of the property is concerned which is covered by the Moody mortgage, Barbour & Co. claim through Fish.

*1. DEED: unauthorized delivery: prior mortgage: subsequent mechanic's lien.*

Their lien could attach upon only such interest in the property as had been acquired by Fish. We come, then, to inquire as to whether it is true, as the counsel for the bank insist, that the contract between Dryden and Fish was never completed.

The property is situated in Lynnville, in Jasper county. Fish resided in Newton. At the time of his purchase he went to Lynnville, and the parties employed one Arnold, a notary public, to prepare the papers necessary for the completion of the trade. Fish was to give his notes for the purchase-money, and notes were prepared and signed by him, and left, as we infer, in Arnold's hands. Fish then returned to Newton. A deed was drawn up, and, three days later, was acknowledged by Dryden, and left in Arnold's hands. A mortgage was to be executed by Fish as a part of the trade, and Arnold was to prepare it. Whether he did prepare it or not does not appear. Fish had returned to Newton, and, so far as the evidence shows, he never gave any further attention to any of the papers which had been prepared, or were to be prepared, in the transaction. He and other parties soon heard of the Moody mortgage, and all seemed to be surprised by it. A few days later he was killed by an accident.

It is not shown that Arnold had any authority to deliver Dryden's deed. While the evidence is not very explicit, it would be reasonable to infer that the understanding was that he should hold it until the mortgage for the purchase-money should be ready for delivery. Clark, however, obtained possession of it in some way, and sent it to Newton, the county-seat, and some one—it does not appear who—caused it to be filed for record. There is an entire absence of evidence that it ever came into the hands of Fish, or that he ever accepted it in any way. It is doubtful, to say the least, whether, after hearing of the Moody mortgage, he was willing to accept it, and carry out the trade by executing the mortgage which he had agreed to execute as a part of the trade. It is certain

that, after the death of Fish, his administrator and heirs did not regard the contract as of any value, and arranged for its cancellation or abandonment.

The conclusion that we reach is that it is not shown that the deed to Fish was delivered, or that he ever became entitled to it, or would have been bound to accept it if it had been tendered. If this is so, then there was nothing in the transaction between Dryden and Fish by which the Moody mortgage was substantially affected. We are aware that Dryden, in his testimony, speaks of a conveyance by him to Fish; but this, we think, was merely his conclusion from the fact that he signed and left a deed with Arnold, which some one, not with any apparent authority, however, caused to be filed for record. He does not testify to any act which in law could be said to amount to a delivery.

We have assumed that a part of the trade was an agreement by Fish to execute a mortgage for the purchase-money. 2. EVIDENCE: It is said that there is no evidence of this transaction with decedent: objection too late. except the testimony of Dryden, and that he is an incompetent witness, because he is a party, and that the matter testified to was a personal transaction between him and Fish, now deceased. To this it is sufficient to say that no objection was made to his competency upon the trial, and it is too late to make it now. *Auchampaugh v. Schmidt*, 70 Iowa, 642.

Much is said about the hardship to Barbour & Co. But the fact is that they not only entered into a contract with a person who does not appear to have had any deed, but who, we think, was not entitled to a deed, without giving a mortgage upon the property for the entire purchase-money. Their security, then, it seems probable, would have been worth but little, if anything, if the contract between Dryden and Fish had been completed.

It is insisted by Barbour & Co. that the court erred in holding the other mechanic's liens paramount to any extent. It is said that their affidavits which were filed for a lien did

not show their contracts with the owners of the land. To this we have to say that the affidavits showed the contracts to be with Clark and Fish, and it is upon their interest alone that mechanic's liens are sought by any one.

We see no error, and the decree must be

AFFIRMED.

SEEVERS, J., took no part in the decision.