CARBINE v. McCOY et al.

1. If a husband and wife agreed that he should make to her a deed conveying an estate in the property as long as they should reside in a certain place, and she fraudulently instructed the scrivener to so draw the deed as to convey the title absolutely to her and her children, reserving to the husband only a life estate, and he was illiterate and deaf and relied on his wife's fidelity, equity will afford him relief.

2. The allegations do not authorize the court to decide, as matter of law, that the plaintiff is not entitled to relief because of gross carelessness in not knowing and understanding the terms of the deed before he signed it.

3. Nor, under the facts, is the plaintiff barred by *laches*, though the deed was executed in 1881 and recorded immediately, and suit was not brought until 1887, he not having discovered the mistake in the deed until 1884.

April 14, 1890.

Equity. Contracts. Deeds. Fraud. Rescission. Mistake. Negligence. *Laches*. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1889.

Carbine by his bill filed July 2, 1887, alleged as follows: He is sixty-six years old. In 1844 he married Thompson Ann Chinn. They had a number of children, four of whom are living, and two of whom have died leaving children, now minors. The complainant is a blacksmith and boiler-maker, and, leaving his family in England in 1867, came to Atlanta to work at his trade. He so far succeeded as to be able, on April 17, 1871, to buy a tract of land in Atlanta, and on May 4, 1874, to buy a house and lot; the value of the two lots being about three thousand dollars. In addition, he succeeded in inventing a useful and valuable improvement for repairing boiler flues, for which he obtained letters patent, and he was able to purchase and pay for furniture worth $500. About 1868 he commenced boarding with Mrs. Nancy McCoy, and soon became fascinated by her and wholly subject to her will

and caprices, so much so that, forgetful of his duties and obligations to his wife and children, he was induced by her to make a will leaving her all his property. In 1875 his wife and children came over to America to live with him. Being still under the influence of Nancy, he was pursuaded by her to apply for and obtain a total divorce from his wife, upon the ground of cruel treatment to him. The final verdict in the divorce suit was rendered November 17, 1880, granting him a total divorce and giving the house and lot to his wife for life. On November 30, 1880, he married Nancy, who had living at the time of this marriage three children, all over twenty-one years of age. The complainant and Nancy had no children. About six weeks after the marriage, he received a business offer to go to Memphis, but Nancy pretended to be bitterly opposed to his going, and said she would not go and he should not, unless he would first make a deed conveying to her all his real estate in Atlanta and all his personal property, she urging that he might die in Memphis and leave her there a widow among strangers. He hesitated about making the deed to her, as he did not wish to have his real estate encumbered with a life estate more than it was already, in case he should desire to sell it; but feeling no serious apprehensions as to the health of himself or of Nancy, and realizing that it was a business opportunity he could ill afford to lose, he finally consented to having a deed to all his realty and personalty executed to Nancy, for and during her life, upon the express condition and solemn promise by her that, as soon as they returned to Atlanta from Memphis, she would deliver up the deed to him to be cancelled or destroyed. They then went to the office of an attorney at law for the purpose of having such deed properly executed. At the time of the drafting and execution of the deed, January 11, 1881, in addition to the fact that he could neither read

nor write, he had very imperfect hearing, to such an extent that he could hear and understand but little that was said in his presence in an ordinary tone, but he relied upon the pretended affection of Nancy and her promise to deliver back to him the deed as above mentioned, and left all the representations as to the nature and extent of the deed to be made to the attorney by Nancy, who at that time had complainant's unbounded confidence; and when the attorney reminded complainant that he was deeding away all his property and asked him if he did not desire to reserve a life estate, even then, owing to his illiteracy and bad hearing, and still more owing to the great confidence he had in the affection of Nancy for him and in her fidelity to his interest and her solemn promises to him, he failed to understand the situation fully and merely replied, "Yes, if you think it best"; and the attorney inserted a clause in the deed providing for a life estate in the property in complainant. He signed the deed by making his mark, delivered it to Nancy and returned to their home in Atlanta, thinking that the deed only conveyed the property to her for her lifetime in the event he should die in Memphis and leave her a widow, and never dreaming that he was by the deed taking from his children all their rights and interests and giving by it his entire interest therein, except his life estate, to Nancy, and after her death to her children by another; he never would have signed and executed the deed if he had heard the wording of it and comprehended its meaning. On the day of its execution Nancy had it recorded, without his knowledge or consent. In about a week after it was executed they went to Memphis, where he remained about three years at work; but after she had been there about a year she returned to Atlanta, remaining about a month, and then went back to Memphis. While he was sojourning in Memphis, at her solicitation he commenced to have a

dwelling-house and other improvements erected upon the first lot mentioned, and forwarded at various times sums amounting to about $1,000 to Thomas McCoy, Nancy's son, to be appropriated to the payment therefor. After the expiration of about three years, he and Nancy returned to Atlanta to live. Shortly afterward he asked her to deliver to him the deed in compliance with her promise; for several days she made evasive answers and pretexts for failing to deliver it, but finally threw off all disguises and positively refused to deliver it, claiming that it was an absolute deed in fee simple of all his property to her and her heirs, and that she would never give it up to him or any one else. He then realized for the first time that he had been the dupe of a fascinating but artful and designing woman, who only pretended to love and care for him for what she could make out of him by reason of his blind infatuation and senile folly, and then he realized for the first time also the great wrong and injustice he had done his long suffering and faithful first wife and their children; and finding that all his entreaties to Nancy to comply with her solemn promise were met with derision, and not knowing that it had been recorded and the effect of its record, he took the deed from her trunk and put it in his own under lock and key. A few days afterwards, about April 1, 1884, she, her son Thomas and her daughter Amanda united in a forcible attempt to regain possession of the deed, during which Thomas struck him over the head with a steel cog-wheel, from which blow he was laid up for twelve days. After recovering partially but while yet stunned and dazed, in compliance with repeated demands of Nancy, he delivered her the key of the trunk with which she opened it and took the deed, and he has never had possession of it since. A few weeks afterwards she was stricken with paralysis, and died in June, 1884. Within two

weeks after her death Thomas McCoy and Amanda Anderson, while complainant was absent from the city and without his knowledge and consent, went to his residence and took forcible possession of his furniture and letters patent and all the rest of his personal property, and have since withheld them from him notwithstanding the fact that, by the express terms of the deed under which they claimed the right and title to the same, he has a life interest in the same and the right to the use, profits and benefit therefrom during his life. He remarried his first wife on April 28, 1886, and they are now living together. The deed of January 11, 1881, was procured from him by the fraud of Nancy, with the knowledge and consent of Thomas and Amanda, and is now being withheld from him by the fraud and collusion of Thomas and Amanda, and subjects him to present annoyance and future liability and costs, and clouds over his title; and the cancellation of the deed is necessary, not only to his protection, but to the preservation and protection of the future rights of his wife and children and grandchildren in the property, and to avoid a multiplicity of suits. He prays for the delivery and cancellation of the deed; that the conveyance be set aside as fraudulent; that defendants, Thomas and Amanda, deliver up the letters patent, and be perpetually enjoined from setting up title, or from conveying or attempting to convey a title to the real estate mentioned in the deed, or any part of it, and from in any manner interfering with the possession or enjoyment by complainant of the real or personal property described in the deed; and for general relief and *subpœna*. Attached as exhibits are the deeds conveying to him the realty mentioned, the verdict in the divorce case, his marriage licenses and returns thereon, showing his marriage to Nancy McCoy and his remarriage to his first wife, and the deed of January 11, 1881,

to Nancy. This deed conveys the realty mentioned, the letters patent, and also whatever property he was then possessed of, to Nancy, her heirs and assigns, except that he was to have "the use, benefits and profits," during his natural life, of the property conveyed.

A demurrer and motion to dismiss were sustained on the ground that there appeared to be no equity in the bill, and that if any error or mistake was committed by plaintiff, it was due to his own gross carelessness. The complainant excepted.

GEORGE S. THOMAS and D. P. HILL, for plaintiff.

HOKE & BURTON SMITH, for defendants.

SIMMONS, Justice.

1. Taking all the material allegations in the petition (which are well pleaded) to be true, we think the court erred in sustaining the demurrer thereto and dismissing the petition. According to the allegations in the petition, the deed signed by the plaintiff contained a very different contract from the one which he says he made with his wife. The contract which he claims to have made was, that his wife should have an estate in the property as long as they resided in Memphis, but upon their return to Atlanta the deed was to be surrendered by her to him. The deed gave to the wife and her children an absolute title to the property, and reserved to him a life estate only. If these allegations are true, the minds of the parties never met and agreed upon the contract contained in the deed. The plaintiff alleges in effect that he was induced to sign the deed by fraud on the part of his wife; that she knew the terms of the contract upon which they had agreed, but fraudulently instructed the scrivener to draw up a different contract, to wit, the one in the deed; that on account of his illiteracy and deafness, he did not know that she had given to the scrivener different directions

than those agreed upon by them, but relied implicitly upon the affection and fidelity of his said wife. If they had agreed upon one contract, and the wife had fraudulently instructed the scrivener to draw up another, and on account of the illiteracy and deafness of the plaintiff he did not know of this, it was such a fraud upon him as a court of equity will relieve. While the general rule is, that a mistake of only one of the parties to an instrument will not justify a reformation of it so as to impose upon the other party obligations which he never intended to assume, or bind him to do or receive what he never contracted for or contemplated, and while the instrument will not be reformed so as to effect such consequences, it may be rescinded or cancelled for the mistake of one of the parties, provided there can be a restoration of the parties to their original condition. Where either of the parties to an agreement is under a mistake, whether of the facts or the stipulations produced by the fraud, deceit or imposition of the other, and the mistake is made to appear by clear and competent testimony, equity will unhesitatingly afford the necessary relief by reforming the writing or cancelling it as the case may require. 2 Warvelle on Vendors, 802. See also Kennerty v. Etiwan Company, 21 S. C. 226; Bergen v. Ebey, 88 Ill. 269; Summers v. Coleman, 80 Mo. 488; Welles v. Yates, 44 N. Y. 525.

2. But it is argued that the plaintiff is not entitled to relief because he was guilty of gross carelessness in not knowing and understanding the terms of the deed before he signed it. Taking the allegations in the petition on this subject as true, we do not think that they make such a case of negligence on the part of the plaintiff as would authorize a court, as a matter of law, to decide that it was such negligence as would deprive him of relief. The allegations were that he was deaf and could neither read nor write; that he had implicit con-

fidence in his wife, and believed that she would give to the scrivener the terms of the contract which they had agreed upon; nor did he have any reason to suspect at that time that she had not done so. We are not prepared to say that a deaf and illiterate man, who loves and trusts his wife, should be charged with negligence under circumstances such as are detailed in this petition. It would be hard to impose a rule on a deaf and illiterate man (or indeed, upon any man) requiring him to watch his wife as he would a stranger in order to prevent her from defrauding him. If the doctrine of negligence applies to fraud in a case like this, it should at least have been submitted to a jury.

3. Nor do we think that the plaintiff is barred from bringing this action by *laches.* It is true that the deed was executed in January, 1881, and that the suit was not commenced until January, 1887; but it can fairly be inferred from the allegations in the petition that the plaintiff did not discover the mistake in the deed until he returned to Atlanta from Memphis some time in the year of 1884. After his return, he alleges that he asked his wife to deliver up to him said deed in compliance with her promise and agreement, and that for several days she " made various evasive answers and pretexts for failing to do so, but finally she threw off all disguise as to her designs and intentions in the premises, and flatly and positively refused to deliver up said deed to complainant, claiming that said deed was an absolute deed and conveyance," and that was the first time he had any knowledge of the mistake in the deed. It is urged, however, that the deed was recorded the day after it was executed, and that put him upon notice; but he alleges in his petition that he left Atlanta within a week after the deed was executed and never returned until 1884; so the suit was brought within a little more than two years from the time he first discovered the

mistake. Taking into consideration the efforts he. made (as alleged in the petition) to induce his wife to. give up the deed; the efforts to procure it from her by other means which he made after her refusal to deliver it to him at his request; and the fact that after he had regained possession of it, the deed was taken from him by force by her and her son; and the dislike which a man would naturally have of bringing a suit against his. own wife for fraud, and that her death occurred during that year, we are of the opinion that he is not barred by *laches* in failing to bring his suit before he did.

*Judgment reversed.*