DENNIS O'CONNOR, Appellant, v. ADELIA O'CONNOR, *et al.*

**Deed:** DELIVERY. Plaintiff executed a deed to his children, leaving it with the justice who took the acknowledgment. The deed was 1 sent to the recorder by the justice, but was recalled by the plaintiff before recorded. The grantees had no knowledge of the existence of the deed until about a year later, when plaintiff's wife, without his knowledge or authority, gave it to one of the grantees, who had it recorded. *Held,* that there was no delivery of the deed by the grantor, sufficient to render it operative.

**ESTOPPEL:** *Laches.* A delay of nearly four years in taking any steps to cancel a deed, after the grantor knows that it has been handed 2 to grantees, and recorded by the latter without grantor's consent, will not bar an action to set it aside; nor will the fact that the grantor, in the interval, made statements insufficient as the basis of an estoppel, to the effect that he had no interest in the property, where he was over seventy years of age, and illiterate, and the grantees were his wife and sons,

*Appeal from Jackson District Court.*—HON. A. J. HOUSE, Judge.

## SATURDAY, DECEMBER 12, 1896.

ACTION in equity to set aside an alleged conveyance of real estate, and to quiet in plaintiff the title to the property described in the conveyance. There was a hearing on the merits, and a decree in favor of the defendants, Adelia O'Connor, Fergus O'Connor, and Mary O'Connor. The plaintiff appeals.—*Reversed.*

*W. C. Gregory* and *L. A. Ellis* for appellant.

*J. C. Longueville* and *Levi Keck* for appellees.

ROBINSON, J.—The plaintiff claims to be the owner in fee simple of a farm in Jackson county, which includes about three hundred and forty-four acres of land. On the twenty-fourth day of November, 1888, he signed and acknowledged an instrument in writing, which purported to convey the land to Bridget O'Connor, the wife of the plaintiff, and to his sons, C. J. O'Connor, Charles T. O'Connor, and Frank P. O'Connor, in consideration of love and affection and one dollar in hand paid. The instrument was recorded on the seventh day of July, 1890. The plaintiff admits that he signed and acknowledged the instrument, but avers that he did so when he was temporarily insane, and that the instrument was never delivered, but that it was wrongfully taken from his possession by his wife, and recorded without his knowledge or consent. The plaintiff has been married twice,—the last time nearly forty years ago, to the defendant, Bridget O'Connor. By his first wife he had three children, all of whom are living. By his second wife he had three sons and three daughters,

who were living when the deed was executed. Those three sons were named as grantees in the deed. C. J. O'Connor, one of the sons named as grantee, is now dead. He left a widow, Adelia, and two children, Fergus and Mary O'Connor. These three, the administrator of C. J. O'Connor, and the three surviving grantees, are made parties defendant. But the widow and children of the deceased grantee are the only ones who contest the claims of the plaintiff. The district court found and adjudged that the title to an undivided one-fourth of the land in controversy was vested in them, and dismissed the petition of the plaintiff. The claim of the plaintiff, that he was not of sound mind when he executed the conveyance is not sustained by the evidence, but it appears that at the time of its execution he was having some domestic trouble in regard to his property. C. T. O'Connor, or "Chris," as he is called, wished his father to help him to a farm, and his mother joined him in trying to influence his father to aid him; but the father refused, and his refusal seems to have caused ill feeling. Chris left home, and while he was away the father applied to a justice of the peace, who lived three miles distant, to draw the deed. After it was signed and acknowledged, it was left with the justice. The plaintiff claims that no directions were given to the justice in regard to the disposition of the deed, but it is probable that he was told to send it to the county recorder, to be recorded, for he at once forwarded it to the recorder's office. The deed was drawn on a Saturday. After the plaintiff returned home on the day it was drawn, he told his wife something of what he had done, and she objected to it. On the next day the parish priest was consulted, and appears to have disapproved the making of the deed. As a result of these conferences, the priest wrote a note to the recorder, which was signed by the plaintiff,

and appears to have been a request to return the
deed. On the same day a son of the plaintiff was
sent to the recorder's office for the deed. He went a
part of the way on Sunday, and arrived at the
recorder's office on Monday morning, after the deed
had been received by the recorder, but before the
envelope in which it was sent had been opened. The
recorder refused to deliver the deed to the son, but
did not then record it, and a few weeks later gave it
to the plaintiff. He carried it to his home, and placed
it with other papers in his possession. More than a
year after that was done, and during his absence in
Dubuque, the wife took the deed from the receptacle in
which he had placed it, and gave it to Chris, who took
it to the county recorder, and had it recorded. That
the deed was recalled from the recorder's office when
it was sent there by the justice before it was recorded
is shown beyond question, and is not disputed. But
it is contended by the appellees that leaving the deed
with the justice for the purpose of having it for-
warded for record, was a sufficient delivery to the
grantees, and effectual to transfer the title to them.
Whether that was true depends upon the facts in
the case. The deed was not left with the justice pur-
suant to any agreement with the grantees, nor does
the evidence show that it was executed to carry into
effect any agreement with them. What the plaintiff
did was wholly voluntary. He denies that he author-
ized the justice to forward the deed for record and
insists that it was left with him to be called for at a
later time. The justice is dead and the plaintiff is
the only one who knows what instructions were
given to him. But the circumstantial evidence
strongly favors the theory that the justice only
obeyed instructions. It is well settled that a deed, to
be effectual to convey title, must be delivered, and
that acceptance by the grantee is essential to a

completed delivery. *Day v. Griffith,* 15 Iowa, 104. The filing of a deed for record, unless done in pursuance of a previous agreement, is not usually effective to transfer title. *Deere v. Nelson,* 73 Iowa, 187 (34 N. W. Rep. 809); *Cobb v. Chase,* 54 Iowa, 253 (6 N. W. Rep. 300); *Moody v. Dryden,* 72 Iowa, 461 (34 N. W. Rep. 210). See also *Richardson v. Grays,* 85 Iowa, 152 (52 N. W. Rep. 10). None of the grantees in this case ratified the sending of the deed to the recorder's office as a delivery to them, and Chris did not know anything of what had been done until after the father had decided not to have the deed recorded. The most that can be said in favor of the claim of the appellee is that the plaintiff intended a delivery of the deed, but that, before it was accomplished, he changed his mind. There was nothing in the transaction which prevented his doing so. The cases of *Robinson v. Gould,* 26 Iowa, 89; *Cecil v. Beaver,* 28 Iowa, 246; *Hinson v. Bailey,* 73 Iowa, 544 (35 N. W. Rep. 626), and *Hoffman's Estate v. Hoffman,* 81 Iowa, 294 (46 N. W. Rep. 1106), —relied upon by the appellees, are unlike this case in controlling facts. There can be no doubt that there was no delivery of the deed when it was made, and that it was obtained and recorded by Chris wrongfully. The plaintiff did not take any steps to cancel the deed until nearly four years after it was recorded, and at different times made statements to members of the board of equalization and others to the effect that he had no interest in the property. But he was over seventy years of age, and illiterate. His conduct and statements are no doubt, due in part, to those facts, and in part to the relationship he bore to all parties in interest. There was nothing of a contractual nature in what he said or failed to do, and nothing which should have the effect of an estoppel is either pleaded or shown. It appears, however, that after the deed was made Chris took

possession of a part of the land which contained ninety-four and one-half acres, and erected a dwelling house and stable thereon, and otherwise improved it, and paid taxes thereon for the years 1890 and 1891. It is said this was done under an agreement between the plaintiff, his wife, and Chris. The claim is not sustained by the evidence. Whether the appellees are entitled to recover for the improvements made and taxes paid by Chris we do not decide, for the reason that but little attention has been paid in argument to that branch of the case; and as it does not appear to have been considered by the trial court, and since the conclusion we reach in regard to the instrument in controversy requires a reversal, the cause will be remanded for a decree in harmony with this opinion, and with leave to the widow and heirs of C. J. O'Connor to establish, if they can, a valid claim for improvements made and taxes paid by him.—REVERSED.