HERMAN WEISE, Appellant, v. D. M. GROVE, Appellee.

**Sale of Land: SUIT TO SET ASIDE CONVEYANCE: PARTIES.** In an action
1   to set aside a conveyance of land sold through an agent on the ground of false representations as to title, and for damages, the agent is not a necessary party where it has been adjudged that neither the agent nor defendant had a valid title, although by an agreement between them defendant held an undivided interest in the land in trust for the agent and had paid him part of the price, and an order directing the agent to be impleaded on penalty of dismissal of the action was error.

**False Representations:** EQUITABLE RELIEF. Equity will grant
2   relief for false representations which are acted upon although not made with intent to defraud.

*Appeal from Story District Court.*—HON. J. H. RICHARD, Judge.

WEDNESDAY, APRIL 13, 1904.

ACTION in equity to rescind and set aside conveyance of land by defendant to the plaintiff, and for damages. The district court dismissed the bill, and plaintiff appeals.— *Reversed.*

*Dale & Harvison* and *E. H. Addison* for appellant.

*J. F. Martin* and *J. L. Stevens* for appellee.

WEAVER, J.—The land, the conveyance of which is here in controversy, is a part of the numerous tracts involved in a litigation which began about the year 1877, and had the attention of this court in *Am. Em. Co. v. Fuller,* 83 Iowa, 599; *American Emigrant Co. v. Rogers,* 83 Iowa, 612; *American Emigrant Co. v. Long,* 105 Iowa, 194. The title which defendant undertook to convey to plaintiff was supposed to be derived from the so-called "swamp-land grant," and with the similar title to other tracts was contested in a series of cases begun at or near the date above mentioned. In the trial court the swamp-land claim was at first confirmed, and in each case an appeal was taken to this court. By a stipulation of counsel the trial of such appeals was suspended in all cases except that of the *American Emigrant Co. v. Rogers Locomotive Works,* which was to be prosecuted as a test case. Final decision of the last-named case was not reached in the Supreme Court of the United States until December 7, 1896, and the result therein was the invalidation of the swampland title. 17 Sup. Ct. Rep. 188, 41 L. Ed. 552. Notwithstanding the stipulation above mentioned, the party claiming title under the swamp-land grant conveyed the land involved in this action to one H. E. Long, who in turn conveyed it to the defendant, both conveyances being made while said appeal was pending and undetermined. The negotiation of the transfer from Long to defendant was conducted by one Gifford. It appears in evidence that Gifford was also directly interested with defendant in the purchase, the latter agreeing in a separate writing to convey one-half the land to the former on demand, or to pay to him one-half the proceeds of the sale thereof. The abstract of title on which the purchase was made disclosed that an appeal had been taken from the decree which confirmed the swamp-land title, but made no mention of the stipulation to which we have referred. After the decision of the test case the party representing the swamp-land title in the case directly involving the lands now in question sought to escape the effect of the stipulation by denying the same, and denying the authority of counsel to en-

ter into such an agreement; but the contention did not prevail, and upon final hearing in this court the stipulation was upheld, and the swamp-land title held to be invalid. *Am. Em. Co. v. Long, supra.* Prior to this time the defendant had conveyed the two forty acre tracts to the plaintiff by deed of special warranty under date of December 17, 1895, pursuant to a sale negotiated by Gifford. Plaintiff, not being able to obtain possession under said deed, applied to defendant to make good his title, and thereupon, in February, 1896, defendant and Gifford instituted a suit in plaintiff's name in the district court to quiet the title in him. This suit resulted adversely to the plaintiff, the hostile title being fully established and confirmed. *Weise v. Leibpke,* 110 Iowa, 594. Upon the conclusion of this litigation establishing the worthlessness of the title conveyed to him, the plaintiff instituted this action May ——, 1901. Stated briefly, he alleges that defendant and his agent, Gifford, sold him the land, representing that defendant held it by a good title and would convey it to him by warranty deed, and that, relying on said representations, he made the purchase, paying therefor the sum of $1,367.33 in securities, and executing his promissory note and mortgage to secure payment of the remainder, $732.67. He alleges the falsity of the representations, and asks for a rescission of the sale, for a return of his money, and for the costs paid by him in the suit instituted in his name by the defendant. The defendant admits the conveyance and the receipt of the consideration as charged, but denies all allegations of misrepresentation and pleads the statute of limitations. He also sets up a counterclaim on the promissory note above mentioned. Other allegations made in the pleadings are not material to the determination of this appeal, and we do not stop to state them.

The trial court, after hearing all the evidence, arrived at the conclusion that Gifford was a necessary party to the record, and on its own motion entered in the record what is called a "preliminary decree," requiring plaintiff to amend and bring in said party by notice, or upon failure to comply

with said order the petition should be dismissed. Plaintiff declining to comply, the petition was dismissed at plaintiff's costs. The counterclaim was also dismissed on the merits, the note being held to be without consideration.

I. In our judgment, there was no such defect of parties as justified the court in requiring the plaintiff to amend upon penalty of dismissal. Had this been an action to settle or adjust the title to the land, and it appeared that Gifford owned a legal or equitable interest therein, the propriety of requiring him to be impleaded would be evident. But the question of title had passed the stage of controversy. The fact that neither defendant nor Gifford had title of any kind, and that the deed from defendant to plaintiff conveyed no title whatever, was settled before this suit was begun. Having assumed to convey the land, and received a valuable consideration therefor, the simple proposition here presented is whether the transaction is of such character, or is attended with such circumstances, that the court will order it rescinded and the plaintiff's money refunded. Defendant alone held the so-called title. He alone conveyed it, and the fact that by agreement between himself and Gifford he held an undivided half in trust for the latter, and in execution of such trust divided the proceeds of the sale with him, is wholly immaterial. The action is personal, not *in rem*. If, as a matter of protection to defendant, his business relations with Gifford were such as to make it desirable to have the latter made a party to the case, he could have accomplished that purpose for himself by filing a cross-petition and serving the proper notice. Defendant is not called upon in this action to answer for the representations or conduct of Gifford, except so far as the record may show Gifford to have been his agent. Defendant cannot be held liable for a dollar more, when sued alone upon the cause of action stated, than he would be held for if Gifford were here as a defendant; and the presence of the latter in court is in no manner essential to a settlement of the merits of the controversy between the parties already in the record.

*1. SUIT to set aside conveyance: parties.*

II.   Counsel on both sides have argued quite elaborately the question whether the petition alleges facts which constitute fraud and whether fraud in fact has been proven.   We

**2. FALSE representations: equitable relief.**   think it unnecessary for us to assume the burden of this inquiry, or of its proper answer. This is not an action at law for damages on account of alleged fraud. Plaintiff's proposition is that certain material representations were made to him, inducing him to part with his money, and that it now transpires that said representations were not true; and, irrespective of the question whether such representations were made in good faith or bad faith (a question which would be of prime importance in a law action for damages), he asks the court, in the exercise of its equity powers, to rescind the contract and order a return of his money.   And to this relief, if the facts be as alleged, he has an undoubted right.   "Even if, by mistake and innocently, a party misrepresent a material fact upon which another party is induced to act, it is as conclusive a ground for relief in equity as a willful and false assertion."   *Wilcox v. University,* 32 Iowa, 367.   It is a "well-established rule that, to entitle a party to relief in equity by reason of fraudulent misrepresentations, it is not necessary that it be shown that the party making the false statements knew they were false when he made them."   *Mohler v. Carder,* 73 Iowa, 582. "In equity there may be a decree rescinding a contract for false representations without proving that the party making them knew them to be false.   And such decree may be made upon the material mistake of the parties without evidence of fraud."   *Smith v. Bricker,* 86 Iowa, 285; *Hood v. Smith,* 79 Iowa, 621.   The term "false representations," as used in this class of cases, does not necessarily imply falsity in the sense of willful untruth told with a fraudulent purpose to deceive, but includes as well mistaken statements made in entire good faith.   The case before us comes well within this rule.   That the defendant and Gifford did represent the title of the former to be good, and induced plaintiff to believe that he was getting fair value for his money, is abundantly proven,

and is scarcely denied in evidence; and that the plaintiff acted upon such inducements in taking the deed is clear. If such misrepresentations were made with knowledge of the real state of the title, then they constitute fraud; and if made in good faith, believing them to be true, they none the less operated to deceive the plaintiff to his injury, and in either case the equitable remedy is available. The defendant as a witness says that representations in support of his title were made to the plaintiff; that he himself believed his title good, and had no intention to get the plaintiff's money without giving him a fair equivalent therefor. Accepting this as a frank statement of the defendant's true attitude, and we still have left a case of mutual mistake—he conveying the land, believing in good faith that he had it to convey, and the plaintiff accepting the deed, believing in good faith that he was being vested with the ownership, when in truth the defendant had no title, and his deed to plaintiff conveyed none. Equity will relieve a purchaser from the consequences of a mistake like this no less promptly and certainly than in a case of fraud.

There is, we think, enough in the record to show the plaintiff's right to the relief asked without stopping to discuss the relation of Gifford to the defendant in bringing about the conveyance. Yet we regard it very clear that, while he had a personal interest in the sale, he was also the agent of the defendant, and that his statements and representations made to the plaintiff in the course of the negotiations must therefore be considered as if made by the defendant himself. If Gifford were a party to the record, it would, of course, be eminently just to hold him to his full share of responsibility in this matter. But his absence in no manner affects the measure of the defendant's liability. Whatever may be the right of the latter for contribution from the former, his liability to plaintiff is for the full amount received by him, and for the costs imposed upon plaintiff in the case against Leibpke. It was defendant who held the supposed title; it was he alone who assumed to convey it; and it was

his title for which plaintiff paid his money only to find it valueless.

III.   The plea of the statute of limitations cannot prevail.   In the first place, if we assume that the statute began to run when plaintiff discovered the truth as to his title, there is no proof in the record when that discovery was made.   If we regard it as being brought to light in, and established by the adjudication in *Am. Em. Co. v. Long, supra,* and *Weise v. Leibpke, supra,* both of these decisions were within the period of five years immediately before this suit was begun.   We think, moreover, it may fairly be said that until the *Leibpke Case,* begun by defendant for the express purpose of determining whether his deed did in fact convey a title, had been determined by the court, it was not legally possible to say whether there had been any mistake or misrepresentation, and the statute of limitations would not run.

The decree of the district court will be reversed, and cause remanded for decree in harmony with this opinion; or appellant, if he so elect, may have decree entered in this court.—Reversed.