C. O. GRAY, Appellant, v. E. W. LA PLANT et al., Appellees.

**VENDOR AND PURCHASER:** Rescission by Purchaser—Fraud—
1  Non-Necessity to Show Scienter. *Scienter* need not be proven, in order to effect a rescission for fraud.

**VENDOR AND PURCHASER:** Rescission by Purchaser—Laches—
2  Change of Position. Courts are prone to excuse a delayed rescission for fraud, when the position of the one against whom rescission is sought has not been changed (a) by the intervention of right in favor of third parties, (b) by the incurring of expense, or (c) by the loss of valuable evidence. So held where the rescission was delayed some fifteen months after possession of the land was taken.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

MAY 20, 1918.

SUIT in equity for rescission. The opinion states the facts.—*Reversed and remanded.*

*Hamiel & Mather* and *Treichler & Treichler,* for appellant.

*Crissman & Linville* and *E. A. Johnson,* for appellees.

STEVENS, J.—This is a suit in equity for the cancellation of a written instrument transferring to defendant the title to a section of Canada land, and six promissory notes, aggregating $17,475, and asking judgment against the defendant for $3,510, which, it is claimed, was paid to him as a part of the transaction in which the above conveyance and notes were executed. The exact nature of the instrument conveying the Canada land to defendant does not appear in the record. It is referred to in the petition as an assignment, and in the argument of counsel for appellant both as an assignment and a deed, but no question appears to be made upon this point, and we will hereafter refer to it as a deed.

It is the claim of appellant that, on or about November 14, 1914, he entered into negotiations with defendant for the purchase of a certain 231-acre tract of land in Benton County, Iowa, of which defendant was then the owner; that the defendant falsely represented to him that the land was of the fair and reasonable market value of $250 per acre, that the land was well tiled out, and that it was not subject to overflow from a creek thereon to such an extent as to damage the land. Appellant testified that he had never before seen the land, and was not familiar with land or its value in the vicinity of the tract in question.

Shortly thereafter, a contract in writing was entered into, by the terms of which plaintiff agreed to, and, on March 5, 1915, did, convey the Canada land to defendant, paid him $3,510 in cash, to satisfy a mortgage upon the Canada land, executed six promissory notes, aggregating the sum of $17,475, to defendant, securing the payment thereof by a second mortgage upon the Benton County land, and assumed and agreed to pay a prior mortgage thereon for $24,000, in consideration of which defendant conveyed to plaintiff the 231-acre tract.

It is the contention of appellee that, prior to the execution of the papers, appellant visited and inspected the land for himself; that nothing was done by defendant to prevent him from fully and freely informing himself of its value, its susceptibility to overflow, the extent of the tiling therein and its fair value; and that he entered into possession of the land on March 1, 1915; that he has continued in possession thereof; that he has leased it, collected the rents, listed the same for sale with real estate agents, and has thereby fully ratified the contract; and, further, that he has been guilty of laches in commencing and prosecuting this suit. The court dismissed plaintiff's petition, and rendered judgment in favor of defendant for costs. Plaintiff appeals.

I.    The season of 1914 was a favorable one for the cultivation of wet land, and in November, when plaintiff visited the tract in question with defendant and his agent, there was a good crop of corn thereon. It is not denied that the subject of tiling, overflow, and market value of the land was discussed by plaintiff and defendant, and also by plaintiff and defendant's agent. The defendant claimed that the land cost him $56,000; but it developed upon the trial that $19,000 of this amount was represented by a house-moving outfit, worth not to exceed $3,500 or $4,000. Defendant testified that he showed plaintiff the several tile outlets on the premises, and that whatever representation was made by him as to the extent of the tiling upon the farm was but a repetition of the representations of his grantor, and that he so informed plaintiff; denied that he told plaintiff that the land was not subject to overflow from the creek, but, instead, told him he could see the situation for himself. It is conceded by appellant that he was shown certain tile outlets on the farm, but he claims that the defendant told him the land was all well tiled out, except the pasture. The term "well tiled out" may not be susceptible of precise definition, but it is clear from the evidence that the land in question was so inadequately and imperfectly tiled that it could not possibly be classed as "well tiled out." There was but little tiling on the farm, and this had been put in by an inexperienced workman; and a profile offered in evidence indicated that its construction was so faulty as to render it practically valueless. The farm was not, to any reasonable extent, tiled out. Defendant's agent also admitted telling plaintiff that he understood that the land was well tiled out, and that Smith, a former owner thereof, had repeatedly so informed him. The evidence also shows that the overflow from the creek seriously affects a large part of one 80 of the farm. The land was not worth to exceed $150 to $170 per acre, and defend-

ant testified, upon a former occasion, that it was not worth to exceed $150 to $155 per acre. The farm was a flat, wet tract of land, of doubtful value, except in exceedingly favorable seasons, for cultivation; and there is no doubt that plaintiff was wholly misled and deceived as to the true condition and value of the land. Concerning the representations of value, plaintiff testified:

"I asked Mr. LaPlant what he considered the farm worth, and he said, '$250 per acre.' After getting back to Cedar Rapids, we went to the Hunter Land Company's office, and Mr. Soper wanted to know if I was going to deal. I told him I was in doubt as to what it was worth. He said the only way was to make a bid. Finally, I told him I would not want it at more than $230 per acre. Mr. La Plant said he ought to have more than that; that it cost a good deal more than that. Mr. Soper then said, in the presence of Mr. LaPlant, that there was no question but what the farm was worth $250 per acre; that Mr. LaPlant was no farmer; that the farm was worrying him, and he had concluded to dispose of it and give somebody a bargain, and they would cut the price some to get rid of it; and said, in order to dispose of it, would take $235 per acre. Mr. Soper said, if I would deal for the farm and list it back with them, I would not have it a year from that time; that the farm was worth all that LaPlant asked for it."

The Canada land was put in at $20 per acre. The only evidence of its value offered upon the trial was that it was worth $17.50 per acre, thus indicating that its value was somewhat inflated in the trade; but, in any view of the evidence, appellee profited by the transaction from $10,000 to $15,000.

It is suggested by counsel for appellee that the evidence fails to show that defendant knew that the land was not well tiled out, or that it was subject to greater overflow

than it is claimed he represented. Whether

**1. VENDOR AND PURCHASER: rescission by purchaser: fraud: non-necessity to show *scienter*.**

this claim is well founded or not, the price paid for the land by defendant was consciously misrepresented to plaintiff, and the land was not tiled out, and was subject to overflow, as above stated. It was not necessary for him to prove *scienter*. *Weise v. Grove,* 123 Iowa 585; *Clapp v. Greenlee,* 100 Iowa 586; *Gray v. Bricker,* 182 Iowa 816.

In our opinion, the evidence of fraud is clear, satisfactory, and convincing, and unless plaintiff has ratified the contract or been guilty of laches, the prayer of his petition should have been granted.

II. It is urged by counsel for appellee that, because of the long delay of plaintiff after he discovered, or should have discovered, the alleged fraud, in notifying defendant

**2. VENDOR AND PURCHASER: rescission by purchaser: laches: change of position.**

thereof, and in failing to commence proceedings for rescission within a reasonable time, the relief prayed is inequitable, and he is estopped from asking cancellation of the deed and notes. It is well settled that, ordinarily, where a party seeks to rescind a contract on the ground of fraud or mistake, he must do so within a reasonable time after the discovery thereof, or after he should have discovered the same. *Rawson v. Harger,* 48 Iowa 269; *Campbell v. Spears,* 120 Iowa 670; *Wilson v. Calhoun,* 170 Iowa 111; *Brechwald v. Small,* 180 Iowa 22. Delay in the commencement of proceedings for rescission may, however, be excused upon various grounds, and, unless there has been some change in the situation of the parties, is often permitted under circumstances which would otherwise bar recovery. The Supreme Court of Rhode Island, in *Chase v. Chase,* 20 R. I. 202 (37 Atl. 804), expresses the rule as follows:

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as

parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."

Such is the general holding. *O'Connor v. O'Connor*, 100 Iowa 476; *Campbell v. Spears*, supra; *Curtis v. Armagast*, 158 Iowa 507; *Wilson v. Calhoun*, supra; *Gray v. Bricker*, supra; *Carbine v. McCoy*, 85 Ga. 185 (11 S. E. 651); *Grewing v. Minneapolis Threshing-Mach. Co.*, 12 S. D. 127 (80 N. W. 177); *Harker v. Scudder*, 15 Colo. App. 69 (61 Pac. 197); *Allore v. Jewell*, 94 U. S. 506 (24 L. Ed. 260); *Ackman v. Potter*, 239 Ill. 578 (88 N. E. 231).

The excuse offered by appellant for the delay in commencing this suit was that the year 1914 was dry, and that, prior to March 1, 1915, when he entered into possession of the land, there was nothing in the condition of the farm or surroundings to impart notice to him or put him upon inquiry as to the truth of the representations alleged; that the year 1915 was exceedingly wet, and that farm lands generally, in the vicinity of the tract in question, were also so wet that they yielded but little; that the land was in possession of a tenant, and that he was absent in Canada from June first to Thanksgiving, and attributed the failure of the land to produce a crop to the unfavorable conditions prevailing generally in the vicinity thereof; that, in May, 1916, he discovered that the lower portion of the farm was swampy, and the higher land in bad condition. By

July, it became quite apparent that the land was not adequately tiled, and plaintiff learned that a large part of one 80 had been overflowed from the creek.  He thereupon made inquiry, and learned the facts concerning the value, the extent of the tiling, and the susceptibility of a large portion of one 80 to overflow.  He went upon the land and dug up the tile, and learned definitely that the quantity was wholly inadequate, and afforded little or no drainage for the land.

This suit was commenced in August, 1916.  The situation of the parties was, at the time, unchanged.  It is not claimed that other interests have intervened, that defendant had incurred expense, or that valuable evidence has been lost to him, or that he has suffered prejudice in any way by reason of the delay.  We are, therefore, constrained to hold that the delay of plaintiff in bringing suit should not bar his right of recovery herein.

It is true that appellant has retained possession of the land, leased it, and collected the rent, and, shortly after the purchase thereof, placed it in the hands of a real estate agent for sale.  These matters should, of course, be considered and given weight in determining the question whether plaintiff delayed bringing the suit for the purpose of enabling him to sell the land at a profit, or to otherwise dispose of it to his advantage; but the whole record must be considered in ascertaining the cause of his failure to earlier seek cancellation and rescission of the contract. When the record as a whole is carefully read and considered, it does not tend to impeach his good faith or to show ratification.

Other matters discussed by counsel, while having some bearing upon the issues and the final determination of the questions involved upon this appeal, are not, as we view them, of such controlling importance as to require separate notice or consideration.  It is our conclusion, from

the whole record, that the decree of the court below should
have been in favor of appellant.    There should be a can-
cellation of the deed conveying the Canada land to defend-
ant, and of the notes executed by plaintiff to defendant, and
judgment in favor of plaintiff against the defendant for
the full amount of the money paid, with interest, as pro-
vided by law.    The judgment and decree of the district
court is, therefore, reversed, and the cause remanded for
such further proceedings as are necessary to effect a proper
accounting between the parties, and for decree in harmony
with the views herein expressed.—*Reversed and remanded.*

PRESTON, C. J., WEAVER and GAYNOR, JJ., concur.