William McNair et al., Appellees, v. Amelia Sockriter et al., Appellants.

**VENDOR AND PURCHASER:** Remedies of Purchaser—Defective
1 Title—Rescission or Damages. A vendee, sued by his vendor on the purchase-money note and mortgage, may neither (a) *rescind the contract of purchase* nor (b) *maintain on the covenants of his deed a cross-action against the vendor for substantial damages* by showing that, under the contract of purchase, the vendor obligated himself to furnish to vendee a good and sufficient deed, with covenants of seizin and warranty, and that the title received by the vendee *might* be wholly defeated by the possible birth of a contingent remainderman, when it further appears that the vendee, (1) without being misled, accepted the tendered deed (which admittedly conveyed the interest in the land of all living persons); (2) took, and always thereafter had, undisturbed possession; (3) had, from the inception of said possession, implied knowledge for over four years, and actual knowledge for over two years, of the said defect in the title, (4) asked for and received an extension of his purchase-money obligations, and otherwise mortgaged the property, after actually learning of said defect; and (5) withheld his plea for rescission until said foreclosure was commenced, and after the land had suffered a material reduction in value.

Stevens, J., dissents as to the holding denying rescission.

**REMAINDERS:** Vested (?) or Contingent (?) A devise which provides
2 that, after a life estate, a named person ''shall become the sole owner in trust, and after her death, that of the surviving heirs,'' creates a contingent remainder.

**COVENANTS:** Actions for Breach—Technical (?) or Substantial (?)
3 Breach. A purchaser who contracts for, accepts, and goes into·

possession under, an ordinary warranty deed conveying the interest in the land of all living and interested persons, and whose possession is not disturbed by the hostile assertion of any adverse title, may not, when sued for the purchase price, recover *substantial* damages on the covenants of his deed by showing that, as a possibility, a contingent remainderman *may* come into existence and validly claim the property.

**VENDOR AND PURCHASER:** Performance of Contract—Merger—Effect. A purchaser who contracts for and receives a deed to lands, and goes into and remains in undisturbed possession, thereby brings about a complete merger in the deed (no contrary intent appearing) of that part of the contract calling for the deed.

**VENDOR AND PURCHASER:** Rescission—Waiver—Effect of Belated Offer. An offer to rescind after the right to rescind has been waived, is nugatory.

**DEEDS:** Consideration—Insufficient Showing of Failure of. No present failure of consideration is made to appear on a showing that the deed holder, though in undisturbed possession under a deed conveying the interest in the land of all living persons having any possible interest, may, as a possibility, be dispossessed by the coming into existence of a contingent remainderman.

Headnote 1:   27 Cyc. p. 1604 (Anno.); 39 Cyc. pp. 1409, 1429.   Headnote 2:   40 Cyc. p. 1675.   Headnote 3:   15 C. J. p. 1288.   Headnote 4: 18 C. J. p. 270.   Headnote 5:   39 Cyc. p. 1433 (Anno.)   Headnote 6: 18 C. J. p. 442.

*Appeal from Warren District Court.*—J. H. Applegate, Judge.

December 11, 1924.

Rehearing Denied April 8, 1925.

Action to foreclose a mortgage given for the purchase price of land. The defendants claimed a partial failure of consideration, arising from a failure of title to part of the land, and by cross-petition asked a rescission of the contract of purchase. From a decree for plaintiffs, defendants appeal.—*Affirmed.*

*Johnston & Shinn* and *O. C. Brown,* for appellants.

*J. O. Watson,* for appellees.

VERMILION, J.—I. The plaintiffs, appellees, brought this action in equity, to foreclose a mortgage upon real estate. The defendants and appellants, in answer, admit the execution of

1. VENDOR AND PURCHASER: remedies of purchaser: defective title: rescission or damages.

the note' and mortgage; allege that they were given for a part of the purchase price of the land; plead a partial failure of consideration, based on the alleged failure of title to part of the land; and set up a claim for damages for the alleged breach of the covenants of warranty in the deeds by which appellees conveyed the land to them, and for the value of improvements made on the land. By a cross-petition they ask a rescission of the contract of purchase on the ground of mutual mistake as to appellees' title, and the cancellation of the note and mortgage. In reply, in addition to a general denial, appellees aver that appellants had full knowledge of the state of the title to the land at the time the purchase was consummated, and that thereafter they executed a written agreement extending the maturity of the mortgage debt and reaffirming the terms of the original note and mortgage; and it is alleged that they are thereby estopped from objecting to the title.

There is no dispute as to the facts. By a written contract dated July 7, 1914, the appellees sold the land in controversy, 160 acres, to the appellants. The contract provided that the vendors should furnish an abstract showing good and sufficient title vested in them, and should have six months to procure the abstract, and that the purchasers should have time to examine the title and complete the deal. An abstract was furnished. The appellants took the opinion of an abstracter that it showed good title; and on or about March 1, 1915, paid the amount of the cash required, and executed the mortgage in suit, for $9,800, the balance of the purchase price. Appellants went into possession of the land, and have remained in the occupancy of it ever since. The note secured by the mortgage became due March 1, 1920. Prior to that date, and in 1919, the appellants endeavored to secure a loan on the farm, apparently for the purpose of paying the mortgage, but were unable to do so because of the condition of the title. On February 12, 1920, however, appellants gave a second mortgage on the land, to secure a note of $7,600. On February 11, 1920, the appellants and ap-

pellees executed an agreement whereby the maturity of the first mortgage debt was extended to March 1, 1925. Appellants defaulted in the payment of the annual interest due March 1, 1922, and the note, according to the terms of the mortgage, became due 30 days thereafter. This action to foreclose the mortgage was then commenced.

No question is made as to the title to 40 acres of the land. It was in appellee William McNair, and conveyed by him to appellants. The facts as to the title to the remaining 120 acres are as follows: Robert R. McNair died testate in 1897, seized of the title. By his will, admitted to probate in September of that year, a life estate therein was given to his widow, who is now deceased. As to the tract in question, the will provided as follows:

"I also will that after the death of my wife, Nancy Ann McNair, that Alice Ann Monfore shall become the sole owner in trust and after her death that of her surviving heirs the following described real estate * * * consisting of one hundred and twenty acres."

In 1912, the appellees commenced an action to quiet their title to the land in question, naming as defendants all persons who, had Mrs. Monfore then died, would have been her heirs. By the decree in that action, entered April 2, 1912, the title of the 120 acres was quieted in the appellee Alice Ann Monfore, "in trust for her surviving heirs." At that time, Alice Ann Monfore was a widow, about 58 years old, with five living adult children and one grandchild, Pearl Roe, a minor, the only son of a deceased daughter. Quitclaim deeds were executed by all the living children to the mother, Alice Ann Monfore, conveying to her any interest they had in the land. In July, 1912, Alice Ann Monfore commenced another action against Pearl Roe, the grandchild, to quiet her title. In that action a decree was entered, declaring that the plaintiff therein was sole owner in fee of the 120 acres; that the will of Robert R. McNair gave to her the absolute power of disposal of the land; and that the trust provided for by the will was void for uncertainty. Alice Ann Monfore conveyed 80 acres of the 120 to the appellee William McNair, who, with his wife, in turn conveyed it, with the 40 acres previously owned by him, to the appellants, in pur-

suance of the contract of purchase. The remaining 40 acres of the 120 were by Alice Ann Monfore conveyed to appellants, in pursuance of the contract. These deeds contained the usual covenants of warranty, and were delivered to appellants about March 1, 1915.

Upon the claim of a right to rescind, the trial court, assuming that the title to the 120 acres was such that appellants might at one time have been entitled to a rescission, held that they had not exercised the right within a reasonable time after discovering the state of the title, and found for the plaintiffs. After a careful examination of the record, we are of the opinion that the conclusion of the lower court was correct.

No fraud is charged. No representations as to the title are shown to have been made by appellees, other than those appearing in the original contract of purchase. That instrument was executed by appellee McNair, who was admittedly acting for himself and on behalf of Mrs. Monfore, and recited that the first party was the owner of the land, and claimed a fee-simple title. The character of the title was fully disclosed in the abstract. There is no claim that this was not furnished within the time required by the contract. The appellants had such examination made of the abstract as they desired, before they consummated the purchase by accepting the conveyance, making the cash payment and executing the note and mortgage in suit, and taking possession of the land. There is some claim that, notwithstanding this, they were in fact ignorant of the state of the title, and did these things relying on the contract, and supposing the title was good. In the fall of 1919, however, they were fully advised, by their inability to secure a new loan from third parties on account of the title, just what the claimed defect was. With full knowledge of the facts, they thereafter executed a renewal of the present loan, and put a second mortgage on the land which is still a lien thereon. They were not lulled into any postponement of action by any promise on the part of the appellees to remedy the defect. The most that is claimed is that, in 1919, after the failure to procure the new loan, one of the appellants consulted the attorney who had represented the appellees in the two actions brought in 1912 to quiet title, and was by him advised to wait, and to extend the note,

and that, when Mrs. Monfore died, his title would be all right. The extension agreement appears to have been procured at the instance of appellants and on the suggestion of this attorney, who said he would see what he could do to get the extension from McNair. No authority is shown in the attorney to then represent the appellees or to bind them by anything he said. The extension agreement, made, as we have said, with full knowledge of the state of the title, contained an express undertaking to pay the debt, and provided that the terms, conditions, and stipulations of the note and mortgage should continue in full force and effect, except as therein modified. The appellees extended the maturity of the loan for five years; and it is only because of the failure of appellants to pay the interest when due, that they have not the full benefit of that extension. The evidence shows that the land was worth less at the time of the trial than when appellants bought it. J. L. Sockriter, one of the appellants, testified that it was worth, at the time of the purchase, $2,200 more than they agreed to pay for it; and the other testimony is to the effect that, at the time of the trial, it was worth $1,200 less than the purchase price. While there is no testimony as to its value in 1919, it will not be assumed that it was then worth less than in 1915; indeed, if it were not worth at that time considerably more than it was in 1915, and more than it was a few years later, it presents a very marked exception to the general course of land values in Iowa.

Where a party seeks to rescind a contract on the ground of fraud or mistake, he must do so within a reasonable time after the discovery thereof, or after he should, in the exercise of ordinary diligence, have made the discovery. *Clapp v. Greenlee,* 100 Iowa 586; *Campbell v. Spears,* 120 Iowa 670; *Strothers v. Leigh,* 151 Iowa 214; *Brechwald v. Small,* 180 Iowa 22; *Gray v. La Plant,* 183 Iowa 844. The law does not attempt to define with strictness what constitutes such laches as will prevent a rescission.

"A court of equity applies the rule of laches according to its own ideas of right and justice. Every case is governed chiefly by its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual, is a ques-

tion to be resolved by the sound discretion of the court.'' *Withrow v. Walker,* 81 Iowa 651.

See, also, *Woodward v. Barr,* 128 Iowa 728; *Mahaffy v. Faris,* 144 Iowa 220; *Gray v. Bloom,* 151 Iowa 566. Laches, it is true, is not mere delay, but delay that works a disadvantage to another. *Gray v. La Plant,* supra. A material change in the value of land between the time when the contract was made or the right to rescission accrued and the time of its attempted enforcement is proper to be considered as bearing upon the equities of the parties, and in determining whether the other party will suffer prejudice from a delayed rescission. *Horr v. French,* 99 Iowa 73; *Mahaffy v. Faris,* supra; *Capps v. Clark,* 196 Iowa 758.

The laches here involved is the failure of appellants to rescind an executed contract of purchase within a reasonable time after discovering the state of the title. There is no analogy to the statute of limitations. They are not, by their present effort to rescind, seeking protection for a vested legal right. It may be conceded that nothing short of the running of the statute of limitations or an abandonment of the legal right or conduct amounting to an estoppel would operate to deprive them of a legal right of defense, or of relief in support of a vested legal right. 21 Corpus Juris 215. But they are asking the equitable relief of rescission against an executed contract, which all authorities, we think, agree they must seek within a reasonable time after discovering the facts.

More than seven years elapsed after appellants, with the means of knowledge as to the title at hand, entered into the contract, before any claim of a right to rescind was made. They made no demand for such relief for two and a half years after they admittedly had full actual knowledge, not only of the state of the record title, but of the possible legal effect of the situation as well. This delay was not induced by any efforts of appellees' to cure the defect, or any promise to do so. With full knowledge as to the state of the title, they secured from appellees an extension of time on the mortgage given for part of the purchase price, and put a second mortgage on the land. The land has materially decreased in value. The prejudice that would result to appellees from a rescission is apparent. We are clearly

of the opinion that appellants have been guilty of such laches as to estop them from now insisting on any right of rescission they may once have had.

II.   The will of Robert R. McNair is very indefinite.   The conflicting constructions put upon it by the two decrees quieting Mrs. Monfore's title tend little to clarify the situation.   The parties interested under the will seem to have treated the situation as one involving a life estate in Mrs. Monfore, with remainder to her surviving heirs.   Whether Mrs. Monfore is but a trustee, or is a life tenant, it is, we think, clear that her surviving heirs at her death will take the fee.   That this is a contingent remainder is also plain.   *Birdsall v. Birdsall,* 157 Iowa 363; *Fulton v. Fulton,* 179 Iowa 948.   Upon such a state of the title, if the question arose upon the enforcement of an executory contract, or upon a claim promptly made to rescind an executed one, it would have to be said that the title conveyed to appellants was not such as they were required to accept.   *Birdsall v. Birdsall,* supra.   It is not, however, questioned by counsel for appellants that the deeds executed by her living children to Mrs. Monfore would operate to relinquish any interest they might have in the land, should they survive her.   *McDonald v. Bayard Sav. Bank,* 123 Iowa 413; *Bisby v. Walker,* 185 Iowa 743.   Nor do we understand it to be claimed that the second decree, holding Mrs. Monfore to be the owner in fee, is not binding on the grandson; at least, no sufficient reasons for its invalidity, so far as he is concerned, are pointed out.   The claim to recover for a breach of the covenants of warranty in the deeds of appellees appears, then, to be based upon the proposition that there is a contingent right in any child that may be hereafter born to Mrs. Monfore, and who shall survive her, or in the issue of any child now living who shall not survive her, or in case she shall die leaving no issue surviving her, in whoever may be her heirs, to an interest in the land. The acquisition by her of the interests of her children and grandchild did not exclude children that might subsequently be born to her, or the issue of then living children who should not survive her, or any others who might be her legal heirs.   *Birdsall v. Birdsall,* supra.   Nor could it be con-

2. REMAINDERS: vested (?) or contingent (?)

3. COVENANTS: actions for breach: technical (?) or substantial (?) breach.

tended that the second decree would operate to deprive any such persons of such interest in the land or such benefit of the trust as the will gave them.

It is well settled in this state, however, that the mere existence of an outstanding paramount title to land will not authorize a recovery by the grantee for a breach of covenants of warranty. *Wilson v. Irish,* 62 Iowa 260. It is not necessary that there be a physical eviction, ·but there must be some hostile assertion of an adverse title. 15 Corpus Juris 1288. While a covenant that the covenantor holds the premises by good right and lawful authority to sell and convey is broken upon the delivery of the deed, where there is an outstanding paramount title, yet, where the covenantee has been given possession, the breach is only technical, and will not authorize the recovery of substantial damages until some positive injury has been suffered. *Nosler v. Hunt,* 18 Iowa 212; *Boon v. McHenry,* 55 Iowa 202; *Hencke v. Johnson,* 62 Iowa 555; *Norman v. Winch,* 65 Iowa 263; *Foshay v. Shafer,* 116 Iowa 302; *Rockafellor v. Gray,* 194 Iowa 1280. Cases where possession was not given or the grantee has acquired the outstanding paramount title are not in point.

Counsel for appellants insist that the first decree quieting title to the land in Mrs. Monfore in trust for her surviving heirs was a technical eviction. The title under which appellants are in possession of the premises was derived from Mrs. Monfore and all persons then in being with the capacity to take the remainder. It is true, the first decree may be said to have also determined that, on Mrs. Monfore's death, others whose interests she had not acquired might, by reason of the birth to her of other children, or the failure of those with the present capacity to take on her death to survive her, be entitled to an interest in the land. This was at most but a possibility; and, while it may operate to prevent appellants from having a good title, it cannot be said that the decree which determined that such a contingency existed, established any outstanding paramount title in anyone who could then assert an adverse claim, or that it amounted to even a technical eviction.

III. The deeds of conveyance were, at least presumably,

accepted as a performance of the contract of sale.  The agreement in the latter to convey a good and sufficient title was merged in the covenants of seizin contained in the deeds.  An often quoted statement of the rule found in Rawle on Covenants for Title (5th Ed.) 535, is as follows:

4. VENDOR AND PURCHASER: ·performance of contract: merger: effect.

"But when the contract has been consummated by delivery of the deed, a different rule comes in.  Any inconsistencies between the terms of the contract and the terms of the deed are then, as a rule, to be governed solely by the latter, into which the former are merged; and the purchaser's only right to relief from defects or incumbrances, whether at law or in equity, depends, in the absence of fraud, solely upon the covenants for title which he has received."

See *Davenport v. Whisler,* 46 Iowa 287; *Carey v. Walker,* 172 Iowa 236; *Thordson v. Kruse,* 173 Iowa 268; *Gardner v. Kiburz,* 184 Iowa 1268; *Gray v. Van Gordon,* 187 Iowa 835.  It is said in *Thordson v. Kruse,* supra:

"Such is the rule where the contract and deed can be said to relate to like covenants and conditions; but it does not necessarily extend to rights collateral to and independent of the conveyances."

The agreement here was "to furnish abstract of title showing good and sufficient title vested in same and to convey same to party of the second part by general warranty deed."  The deeds contained covenants that the grantors were lawfully seized of the premises and had good right and lawful authority to sell and convey the same, and that the grantors would defend the premises against the lawful claims of all persons.  The contract and covenants in the deed related to the same thing,— the title of the grantors.

In *Gray v. Van Gordon,* supra, the opinion in *Houghtaling v. Lewis,* 10 Johns. (N. Y.) 297, is quoted with approval, to the effect that:

"Parties may, no doubt, enter into covenants collateral to the deed, or cases may be supposed when the deed would be deemed only a part execution of the contract, if the provisions in the two instruments clearly manifest such to have been the intention of the parties.  But the prima-facie presumption of

law arising from the acceptance of a deed is that it is an execution of the whole contract; and the rights and remedies of the parties, in relation to such contract, are to be determined by such deed, and the original agreement becomes null and void.''

Where merger of the contract into the deed is denied, the burden is on the party so denying to show that a merger was not intended. *Gray v. Van Gordon,* supra. Here, not only the instruments themselves, but all the attending circumstances, negative the idea that there was any intention other than that the contract to convey a good title was merged in the deed, with its covenants of seizin and title.

It is a general rule that a vendee in undisputed possession of the purchased real estate cannot refuse payment of the purchase price for alleged lack of title in the vendor, unless he rescind the contract and restore possession to the vendor. *Allen v. Adams,* 162 Iowa 300; *McCreary v. McGregor,* 183 Iowa 732. It is said in some of the cases that, in such a situation, the purchaser must either rescind or offer to do so, or perform the contract. *Hounchin v. Salyards,* 155 Iowa 608; *Campbell v. Hagerty,* 191 Iowa 1265; *Dierksen v. Pahl,* 194 Iowa 713. The underlying reason for the rule is that, where he does not elect to rescind, it is considered that he is willing to receive such title as the vendor is able to give, and is content with the personal responsibility of the vendor upon his covenants of warranty, in case the title actually fails, and he is dispossessed.

Here, it is true, the appellants have offered to rescind; but we are clear that that remedy has been lost to them by their laches. Under such circumstances, can their offer to rescind avail to give or preserve to them a right to resist payment of the purchase price? They must either rescind or perform the contract. They have retained possession of the land under such circumstances and for such length of time that they have lost the right to rescind. When called upon to pay the purchase price, can they, upon their mere offer to do that which they have lost the right to enforce, compel the vendors, nevertheless, to accept a rescission or suffer them to retain the land and also the purchase price? If this be so, they have lost nothing by their laches. Although the vendees are in undisputed possession of

5. VENDOR AND
PURCHASER:
rescission:
waiver: effect of
belated offer.

the land, under a title the condition of which they knew when they accepted it, and which vested in them the interests of all persons with a present capacity to take any interest in the land, and which may eventually ripen into a perfect title, the vendors must either accept a rescission or suffer a present loss of a portion of the purchase price, when the title may in time be perfectly good. Such an alternative does not work equity. The failure of appellants to rescind within a reasonable time is equivalent to an election to take the land with such title as there is. As a result of that election, they become bound to pay the purchase price; and their only remedy, in the absence of fraud or insolvency on the part of the covenantors, is upon the covenants in their deeds, in case they shall be dispossessed under an adverse title. The reason frequently given for allowing a recovery by way of abatement of the purchase price where there is a clear right to recover for a breach of warranty of title, that thereby a multiplicity of suits will be avoided, has no force here; for it is not certain that appellants will ever have a cause of action upon the covenants.

Moreover, unless it must be said that appellants acquired no title whatever, there is no present failure of consideration. They are in the undisturbed possession of the land under conveyances 6. Deeds: consideration: insufficient showing of failure of. that unite in them the claims of all persons in being who have or are capable of taking any interest in the land, should Mrs. Monfore now die. Unless some one or more of the contingencies, upon the happening of which others would, on the death of Mrs. Monfore, have an interest in the land, should occur, their title will be perfect.

As we have said, the question is not the enforcement of an executory contract or the timely rescission of an executed agreement; but appellants' claim of a failure of consideration is, in effect, to recover from the vendor by an immediate abatement of the purchase price, as for a failure of title, when none has yet occurred,—for there is no one with an adverse claim,—and when it cannot be known that an adverse claim will ever arise. It is only in the event that another child shall be born to Mrs. Monfore and survive her, or that one or more of her living children or her grandson, whose interests she acquired, shall not survive her, that appellants' title can be questioned. The possi-

ble injustice that might result from allowing them now a substantial and irrevocable abatement from the purchase price when their title may be complete, is manifest; while to leave them to pursue their remedy upon the covenants in their deeds in case an adverse title shall be asserted, is but leaving them in the position where, by their acceptance of the deeds, they have put themselves.

We conclude that the judgment and decree are right, and they are—*Affirmed.*

Evans, Preston, and Faville, JJ., concur.

Stevens, J. (dissenting).—I cannot agree to the conclusion of the majority. The facts recited in the majority opinion as to the title are substantially correct. Appellants' grantors were contingent remaindermen, and held no other title to the land. The contract required them to furnish an abstract showing a good and sufficient title. The abstract disclosed the defects in the title; but these were not, in fact, known to appellants. On the contrary, they appear to have been assured by the opinion of an abstracter to whom they submitted the abstract for examination, that the title was good. When the mortgage executed in part payment of the purchase price came due, and appellants undertook to negotiate a loan with a third party for the purpose of securing the money with which to pay it, they learned for the first time the facts concerning the title. Instead of rescinding the contract, as they then had a right to do, they entered into an agreement with appellees for an extension of the loan for another five years. Upon failure to pay the interest on the note, this action was commenced, to foreclose the mortgage. Appellants set up the defects in the title which disclosed the inability of appellees to perfect it in any way, offered to place them *in statu quo*, and prayed a cancellation of the deed and the rescission of the contract.

It is conceded by the majority that mere lapse of time for less than the statutory period does not justify a plea of laches. Indeed, as stated in 21 Corpus Juris 215, it is a familiar rule that:

"Where, however, plaintiff comes into equity, not for the creation or establishment of an executory right, but for the

mere protection of an executed or vested legal right, the doctrine of laches has little, if any, application. The rule here applied is that, unless the statutory period of limitations has run, or sufficient time has elapsed to create a presumption of grant, no mere delay is a bar to equitable relief in support of the legal right, and that plaintiff is precluded from relief only by such conduct as creates an abandonment of the legal right itself, or an estoppel to assert it against defendant.''

The position of appellants in the case before us is that of cross-petitioners, seeking affirmative relief. I will concede that, if appellants purchased only such interest as their grantors possessed in the land, and same was conveyed to them, they cannot complain, no matter how imperfect the title may in fact be. This they did not do. The duty rested upon appellees to convey to them a good title, which duty was an affirmative and continuing one. It was not terminated by the execution of a deed with covenants of seizin and warranty.

The theory of the majority, based upon the alleged merger of the contract in the deed, that appellants were deprived of every remedy except the precarious one of, sometime in the future, after the death of their grantors, maintaining an action against their estate on the covenants of the deed, provided, of course, that an ouster has taken place, does not appeal to me as sound. The doctrine of merger as here enunciated goes too far. The deed did not merge all the terms of the contract. *Huxford v. Trustees*, 193 Iowa 134. The rule of law that recovery of actual damages for the breach of a covenant and seizin is postponed until ouster, is, of course, well settled in this state; but there is something more in this case than a mere right to recover damages at some future period. The action is for the recovery of a part of the *purchase price,* and partakes, somewhat at least, of the nature of an action in equity for the specific performance of a contract. If it were, in fact, a simple action for the specific performance of a contract to enforce the payment of the purchase price, and it appeared that the seller had no title, no recovery would, of course, be allowed. Why should a recovery, on the same state of facts, in a different form of action in the same forum, with the same inequitable results, be allowed? I find nothing in the record remotely or otherwise

tending to show prejudice to appellees, or waiver or abandonment of any right on the part of appellants, or any such change in the situation of the parties as to make rescission inequitable and the recovery of the full purchase price without performance of the contract on the part of appellees, equitable. I maintain that appellants were not bound to rescind until appellees demanded payment of the purchase price. Appellants were unaware of the full defects in the title prior to 1919, when they sought a new loan; and even then they were advised by the attorney consulted by them that, in his judgment, their title was good, subject only to the contingency that other children might be born to the life tenant,—which could not occur.

The obligations of the parties under the contract were mutual. Appellees failed almost wholly to perform on their part, and I am unwilling to hold that appellants are deprived of relief in equity because of the mere lapse of time, and nothing more. There may have been some depreciation in land values after 1919; but appellees were at all times conscious of their failure to comply with their requirement, and that their deeds carried with them little more than a mere right of possession. I think appellants should have been permitted to rescind the contract. If this cannot be, then I can perceive no objection to placing a provision in the decree suspending the right of execution until the title has been perfected in appellants, upon condition, however, that appellants pay the interest on the mortgage at the rate of six per cent, and keep the taxes paid on the land.

ARTHUR, C. J., joins in this dissent.