E. P. HOGAN, Appellee, v. N. K. ROSS et al., Appellants.

**APPEAL AND ERROR:** Abstracts of Record—Computing Terms on
1  **Question of Filing.** A term of the Supreme Court which convenes *less* than 30 days after the service of a notice of appeal will not be counted on the question whether appellant has filed his abstract 30 days ''before the second term after the appeal was taken.'' (Sec. 12848, Code of 1924.)

**VENDOR AND PURCHASER:** Rescission—Justifiable Refusal. The
2  rescission of an executed contract of purchase of real estate is properly refused when it is made to appear that the prayer for rescission was made for the first time after the purchaser had been in unrestricted possession and control of the land for some three years, with knowledge of the fraud pleaded, or with the means to know of such fraud, and after the land had very materially decreased in value.

Headnote 1:  4 C. J. p. 464.  Headnote 2:  39 Cyc. p. 1428.

*Appeal from Iowa District Court.*—H. F. WAGNER, Judge.

SEPTEMBER 29, 1925.

ACTION in equity, to foreclose a real estate mortgage, with cross-petition on the part of the defendants, praying a rescission of the real estate transaction giving rise to the mortgage in suit, and predicated on the fraud and misrepresentation of plaintiff. The opinion states the material facts. The trial court determined the equities in favor of plaintiff, dismissed defendants' cross-petition, and entered judgment for the amount of the mortgage as claimed by plaintiff. Defendants appeal.—*Affirmed.*

*E. P. Cronin, W. E. Wallace,* and *Stapleton & Stapleton,* for appellants.

*J. M. Dower* and *Havner, Hatter & Harned,* for appellee.

DE GRAFF, J.—Plaintiff commenced this action to foreclose a real estate mortgage executed by the defendants as part consideration in the exchange of properties between them. With this phase of the case the appeal is only incidentally concerned.

The controversy has its inception in the allegations of the defendants as found in their cross-petition. The prayer of the defendants is for a rescission, and they ask that they be put *in statu quo.* This claim is based on certain alleged fraud and misrepresentation on the part of the plaintiff in effectuating a sale or exchange to defendants of a certain 315-acre farm situated in Johnson County, Iowa.

With the law applicable to the issues there is little ground for quarrel. The case suggests purely fact questions presently to be noted. Preliminary to a statement of the issues, it may be observed that appellee, prior to the filing and service of the abstract of record by appellant, filed his motion to dismiss the appeal. This motion is based on statutory grounds, and the

1. APPEAL AND ERROR: abstracts of record: computing terms on question of filing.

ruling thereon involves the application of the statute to the record facts. By way of brief summary, the judgment in this cause was entered against the defendants July 9, 1923. Notice of appeal was served January 4, 1924. The January, 1924, term of this court began January 8th. Under the rule of statute (Section 4120, Code of 1897) then in force, "if an abstract of record is not filed by appellant thirty days before the second term after the appeal was taken, unless further time is given by the court or a judge thereof for cause shown, the appellee may file an abstract of such matters of record as are necessary, or may file a copy of the final judgment or order appealed from, or other matters required, certified to by the clerk of the trial court, and cause the case to be docketed, and the appeal upon motion shall be dismissed, or the judgment or order affirmed."

The material inquiry, then, is whether the appellant filed his abstract thirty days before the second term (September,

1924) after the appeal was taken. See Sections 4116-4120, Code of 1897. The abstract of record was filed August 8, 1924. The notice of appeal was not served thirty days before the first day of the January, 1924, term of this court. It is apparent, therefore, that the appeal was not taken for the January, 1924, term, and that the first term was the May, 1924, term. The abstract was filed more than thirty days before the second term after the appeal was taken, or before the September, 1924, term, commencing September 16, 1924.

We have heretofore construed this rule in *Hanson v. Hammell,* 107 Iowa 171; *Newbury v. Getchell & Martin Lbr. & Mfg. Co.,* 106 Iowa 140. The appellant having filed his abstract more than thirty days before the second term after the appeal was taken, his right to prosecute the appeal exists. The motion to dismiss is overruled.

We now turn to the issues and the record facts having a material bearing thereon. Plaintiff's petition in foreclosure was filed August 16, 1922. The written contract for the ex-

2. VENDOR AND change of properties bears date August 9, 1919.
PURCHASER: re- The original cross-petition was filed September
scission: jus-
tifiable refusal. 19, 1922. It may be stated at the outset that, during the interval of time between the signing of the contract and the filing of the cross-petition,—a period of more than three years,—no claim or assertion of fraud or misrepresentation was made by defendants. The first echo is found in the cross-petition, finding its provocation in the attempt on the part of the plaintiff to secure himself by a foreclosure proceeding.

It may be further stated that, upon the consummation of the contract giving rise to the instant controversy, a deed to this farm was executed by plaintiff and delivered to defendant, accompanied by an abstract showing merchantable title, and that defendants took possession of said farm, leased same to three tenants successively, and held possession and exercised full dominion over said farm during the period in question. In the light of these statements, one naturally inquires the nature and character of the fraudulent representation upon which defendants predicate their right of rescision. We are dealing with an executed contract, and ordinarily a court will hesitate to de-

clare a rescission after more than three years have elapsed from the time that the fraud is alleged to have been perpetrated.

The primary claim of the plaintiff in his reply to the cross-petition of the defendants is that the latter have not acted with reasonable diligence, and must be held, as a matter of law, to be guilty of laches sufficient to work an estoppel. This in fact is the only debatable question, except, as incidental thereto, to inquire what prejudice or damage was suffered by the plaintiff on account of such delay. It is recognized that a party asking rescission must act with reasonable promptness after discovery of fraud, but rescission is not primarily dependent on mere lapse of time. The particular circumstances of each case are the controlling consideration. *Rohr v. Shaffer*, 178 Iowa 943. Canceling an executed contract is the exercise of one of the most extraordinary powers of a court of equity, and it ought not to be exercised unless the alleged fraud is satisfactorily shown.

If it appears that the complaining party had knowledge of the claimed fraud or of such facts as would naturally suggest it, and would cause a person of ordinary prudence to investigate and to ascertain the truth, equity will be slow to forgive the laches and afterward relieve by rescission. *Bean v. Bickley*, 187 Iowa 689; *Brechwald v. Small*, 180 Iowa 22; *McNair v. Sockriter*, 199 Iowa 1176.

In reviewing the issues and the evidence, these principles of equity jurisprudence must be borne in mind. In the original cross-petition it was alleged by the defendants that the agents of the plaintiff in effecting the exchange of properties "stated to the defendant Ross at different times that he need not be afraid of water upon this farm; that it had never overflowed in whole or in part but once in thirty-four years." To this the plaintiff replied by denial, charging laches, and by admitting that the farm had in whole or in part overflowed more than once within thirty-four years. Subsequently, and approximately nine months thereafter, defendants amended their cross-petition and tendered a new issue, predicated on alleged misrepresentations by the agents of plaintiff as to the boundaries of the farm, as disclosed in the following averment:

"And that at said time, and while the said agents of the plaintiff were so showing said farm to the defendant N. K.

Ross, and while the said parties were upon said farm, the said agents of the plaintiff pointed out to this defendant, N. K. Ross, what they denominated as the west, south, and east boundary lines of said farm, and verbally told the defendant that the land included in the boundary lines that they pointed out were 315 acres. * * * that the boundary lines so pointed out by said agents were not the true boundary lines of said farm, and that the land included in the said boundary lines so pointed out included other land than this farm, and did not include 315 acres of the farm in controversy.''

This allegation is traversed by plaintiff, and the one agent who is charged by defendant in making same denies on the witness stand, and testifies he was not acquainted with the location of the boundary lines in question.

The purchaser Ross had lived for many years at Victor, Iowa, and was engaged in the drug business in said town. The farm was situated about ten miles from Victor. Ross continued his residence at said place and remained in management of the traded drug store as agent of the plaintiff-purchaser until about the 1st of February, 1921. About one year and a half after the deal was consummated, Ross moved to Silvis, Illinois, but on several occasions thereafter revisited Victor and the farm.

The material defense in this case involves the doctrine of laches. Did the defendant know, or was he in the possession of such facts as would cause a person of ordinary prudence to investigate and ascertain the truth of the statements which he later asserted were made to him as the inducing cause for the purchase of the land? Did the defendant know that the Iowa River bordered this farm? As to the latter question we have no hesitation in finding, under this record, that he must have known, and he must have known it before he ever signed the contract. Reference is made to the Iowa River as forming a part of the boundary of the parcel of real estate in question five times in the written contract in evidence, and reference is made to the ''old Iowa River bed'' three times in said contract. Defendant admits that he read this contract, and the same description is found in the deed which was delivered by the plaintiff, and, of course, the same matters are contained in the abstract of title which was turned over to the defendant for ex-

amination at the time of the purchase. Very little weight can be attached to the claim of the defendant that one of the agents of the plaintiff, at the time of the inspection of this farm, said, upon approaching a certain point upon the Iowa River: ''Now this is the only point where the river touches the farm.'' It is quite obvious that the defendant, in the light of the written evidence, is not in a position to claim that he relied upon any such statement on the part of the agent as an inducing cause. He knew that there was a levee on this farm, and that knowledge came to him at least in the early part of January, 1922. It appears that, in the lease of this farm, which the defendant Ross executed with Roy McCain, dated March 7, 1922, the tenant agreed to repair the levee on the west side of the farm ''forty feet more or less,'' without expense to the landlord. On May 8, 1922, Ross wrote a letter to said McCain, in which he said:

''In regard to the levee as you say it would be considerable work to repair beyond.''

On January 3, 1922, he had a talk with plaintiff Hogan concerning the levee, and about that time he talked with Mr. Baldwin, who wanted to rerent the farm, and the latter ''thought it would be all right if the levee was repaired.''

We deem it unnecessary to detail further the record facts which disclose that the defendant must have known the situation long before he incorporated his complaint in his crosspetition. It is equally as evident that he was in a position to know, and did know, that the farm in question was subject to overflow. We find that in April, 1921, he wrote a letter to his tenant expressing an anxiety to know what damage had been caused to the farm by reason of ''the last spell of weather,'' and on September 26, 1921, he wrote:

''I am very sorry to hear of your bad luck owing to the storm and high water; very unusual condition for the time of year.''

On March 7, 1922, he addressed a letter to Hogan in which he states:

''Friend E. P.: I am sorry that you took it from my letter that I felt you have not treated me fine, as I surely feel that you have. I thought possibly in view of getting such small returns from the farm for the past two years, partly due to low

prices and high water,'' etc.

During the first year of the possession of the farm, the access of his tenant Comer to the lower farm lands was intercepted by high water and the washing out of a bridge over one of the ravines.

The evidence is sufficient to disclose that the misrepresentations as pleaded by the purchaser were of a positive character, and quite material; and yet, with knowledge of the situation, he opened not his mouth. A court does not permit a purchaser to speculate with conditions, nor is a court concerned with the unwisdom on the part of a purchaser in entering into a contract of real estate which subsequently is found to be a disappointing venture. The record is amply sufficient to have excited his inquiry quite early in the game, and it is idle to contend, as did the defendant in cross-petition, that he did not learn of the truth of the representations made by the agents of the plaintiff ''until after this action was commenced, and until about the time that the defendants' counterclaim and cross-petition was filed in this case.''

It is clearly shown by the testimony of one Isaac Scott, who is thoroughly familiar with the characteristics of this farm and its boundary lines, that in the spring of 1920 Ross was put upon his guard. There is other evidence from which a court could determine that Ross had knowledge of the overflow condition of the farm during the early period of his occupancy thereof, and that the court was in a position to make a finding that the plaintiff Hogan himself told Ross, prior to the execution of the land contract, of the possibility of overflow condition, and said, ''It is subject to overflow.'' There is no dispute that the farm in question contains 315 acres, and Ross must have known since 1920 the acreage in crops, pasture, and grass land. His lease to Baldwin, dated February 24, 1921, recited:      .   ;   .

''And about 175 acres to be used for pasture, and 15 acres is deducted from total amount of acreage on account of it being low or waste land.''

His lease to McCain recited:

''About 100 acres for corn, about 30 acres for small grain and about 175 acres to be used for pasture and hay and 15 acres

is deducted from total amount of acreage on account of its being low or waste land."

In a letter which he wrote to C. I. Denzler, his banker, January 6, 1922, he stated:

"My deed calls for 315 acres of land, but I only rent 300 acres as there is some waste land down by the river. Now as to terms: 175 acres in grass at $6 per acre, 125 acres under cul- tivation, which I wish one-half crop to be delivered at the Marengo elevator. A good manager or worker with stock could do fine on this farm, and the right man can stay as long as I have this farm for rent."

One further point is worthy of mention. This land under- went a material change in value between the time that the con- tract was made and the time of its attempted rescission, and this is a proper matter to be considered as bearing upon the equities of the parties, and in determining whether the vendor suffered prejudice from a delayed rescission. That prejudice would result to the plaintiff by a rescission of the contract at this time is boldly apparent, nor do we deem the defendant to be in a position to restore the *status quo*.

We hold that the defendant, under the clear preponderance of the evidence, is guilty of laches. It does appear that de- fendant had knowledge or was in the possession of material facts that suggested the falsity of the representation as claimed by him, if such was made. He did not act with promptness, even conceding—but without determining—that his proof was suffi- cient in the first instance to establish the pleaded fraud. The means of knowledge was open to him; and not only this, but he must have known. He failed to avail himself of the remedy that would possibly have saved him. We place no emphasis whatso- ever, as an element of fraud, on the statements of value alleged to have been made as to the land in question prior to the ex- change. They cannot even be viewed as extravagant expressions of opinion, in the light of the speculative values which at that time were being placed upon Iowa real estate in the immediate neighborhood of the farm in question. It must be conceded that land values at that time were inflated, but the prevailing prices were well recognized. It was during the unprecedented boom in 1919 and the fore part of 1920. The deal did appear ad-

vantageous to Ross when it was made; but, after more than three years of experimentation, and with declining prices of farm products, and with a decline of 50 per cent in land values, it is not a surprise that the purchaser would attempt "to get out from under."

This is not a case for rescission; and without a further review of the facts or the law, we hold that the trial court correctly ruled the case. Wherefore, the judgment and decree entered is—*Affirmed*.

FAVILLE, C. J., and VERMILION, J., concur.

STEVENS, J., concurs in the result.