Russell FOLKERS, Plaintiff–Appellee,

v.

SOUTHWEST LEASING, a Partnership, Southwest Leasing, Inc., as Successor to Southwest Leasing, a Partnership, Roger D. Herman, Defendants–Appellants,

LeRoy L. Gray, Defendant–Appellee,

Carolyn Gray, Defendant.

Russell FOLKERS, Plaintiff–Appellee,

v.

SOUTHWEST LEASING, a Partnership, Southwest Leasing, Inc., as Successor to Southwest Leasing, a Partnership, Roger D. Herman, Defendants,

LeRoy L. Gray, Defendant–Appellant,

Carolyn Gray, Defendant.

Nos. 87–629, 87–1077.

Court of Appeals of Iowa.

Aug. 24, 1988.

Edward J. Gallagher, Jr. and Cynthia Sherrman of Gallagher, Langlas & Gallagher, P.C., Waterloo, for Southwest Leasing and Roger D. Herman.

Larry L. Anfinson and Peter B. Newell of Randall, Anfinson & Luce, Waterloo, and Emil Trott, Jr. of Barrett & Trott, Des Moines, for LeRoy L. Gray.

Gene Yagla of Lindeman & Yagla, Waterloo, for Russell Folkers.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

DONIELSON, Judge.

This is a limited consolidation wherein Southwest Leasing and LeRoy Gray appeal from a district court judgment rescinding Folkers' contract to purchase real estate from Southwest, and awarding Folkers damages. Southwest alone appeals the ruling that LeRoy Gray was entitled to indemnification from Southwest for any damages based on a stock redemption agreement between Gray and Herman.

Southwest and LeRoy Gray both contend that: (1) the district court erred in using extrinsic evidence to interpret the portion of the real estate contract requiring an access be provided from the property to the highway; (2) the district court erred in rescinding the contract; and (3) the district court erred in computing interest at the contract rate on the money damages from the date the deed was transferred to Folkers. In addition, Southwest asserts the district court erred in ruling that LeRoy Gray was entitled to indemnification for any damages arising out of this lawsuit from Southwest under his stock redemption agreement with Southwest and Roger Herman. We affirm and remand.

On February 1, 1979, Folkers purchased six acres of property from Southwest Leasing, a partnership. Southwest Leasing was comprised of two partners, Roger Herman and LeRoy Gray. The real estate contract provided for a purchase price of $30,000. Folkers paid the purchase price of the property and received a deed on the property from Southwest Leasing, a partnership, on November 30, 1980.

When the real estate contract was signed, the City of Waterloo contemplated construction of a road in the area where the property was located. However, the City eventually decided to construct its road north of the subject property. On June 5, 1986, Folkers commenced this action seeking equitable relief based on Southwest's failure to provide a road as per their contract. Testimony was presented that Southwest and Folkers were in the trucking business and that Folkers intended to use the property to wash trucks. The district court rescinded the contract, returned the purchase price of the property to Folkers, and awarded Folkers interest on the purchase price amount at the contract rate from November 30, 1980.

LeRoy Gray cross-claimed against Roger Herman and Southwest, Inc., claiming that Southwest, Inc. and Herman are required to indemnify him from any liability he may incur from this case. The basis for this claim is a stock redemption agreement which effectively dissolved Gray and Herman's business relationship on June 1, 1984. Prior to this date, all of the assets of Southwest Leasing, a partnership, were transferred to Southwest Leasing, Inc. Then the corporation redeemed Gray's stock in exchange for cash and some property. This stock agreement provided that "The Company and Herman agree to hold Gray harmless from any Company debt Gray has personally guaranteed." The district court agreed with Gray's interpretation that this hold harmless agreement required Southwest, Inc. and Herman to indemnify Gray from liability in this case.

Southwest and Gray contend that rescission of the real estate contract is inequitable in this case. The contract is unfulfilled based on a mutual mistake, not because of fraud or an intentional breach. Extrinsic evidence as to the purpose of the road easement should have been excluded at trial. And, since Folkers had the use of the property for several years, awarding the purchase price plus interest is unwarranted.

Southwest additionally claims that Gray is liable for any damages assessed against Southwest and Herman. The real estate transaction cannot be construed as a "debt" under Iowa law. Thus, the hold harmless clause does not apply to absolve Gray from liability as was determined ·by the district court.

These two actions are in equity. Our scope of review is de novo. Iowa R.App.P. 4. The court gives weight to the fact findings of the trial court, but is not bound by them. Iowa R.App.P. 14(f)(7).

I. Southwest and LeRoy Gray contend that the trial court erred by using parol evidence in construing the contract between Southwest Leasing and Russell Folkers. The trial court found that the seller was obligated to provide access to Highway 20 at its own expense pursuant to the contract. The relevant portion of the contract is paragraph nine. It states: "Seller shall provide for a road easement and a driveway from highways [sic] twenty and shall clear the land as needed."

The parol evidence rule is a rule of substantive law not related to interpretation or the admission of evidence for the purpose of interpretation. *Janssen v. North Iowa Conference Pensions Inc. of Methodist Church,* 166 N.W.2d 901, 904 (Iowa 1969). Interpretation is the search for the meaning of contractual terms. *Pathology Consultants v. Gratton,* 343 N.W. 2d 428, 433 (Iowa 1984). Even in cases where the language is plain and clear, parol evidence of the surrounding circumstances is used by the court to discover and apply the meaning which each party had reason to know would be given to the words by the other party. *Janssen,* 166 N.W.2d at 904. Our object is to ascertain the meaning and intention of the parties as expressed by the language used. *Gratton,* 343 N.W.2d at 434.

A review of the circumstances surrounding the transaction reveal that on the date of the contract, February 1, 1979, the property in question had no motor vehicle access to Highway 20. Plaintiff Folkers was in the truck washing business and was outgrowing his existing location. His intention was to eventually move his business to this property.

The partners of Southwest Leasing, Roger Herman and LeRoy Gray, were also involved in the trucking business. The six acres of land sold to Folkers were part of the 21.5 acres Southwest Leasing purchased on January 1, 1979, from Ruth and Harold Rooff. Both of these real estate transactions used a form contract. However, only Folkers' contract contained the clause about the driveway.

At the time Southwest purchased the land from the Rooffs, there was talk about a flood control project in the area. The plans called for a crossing in the area of Folkers' property. The Rooffs represented to Southwest that the crossing would probably be located on the property, providing direct access to the highway. This plan

was relayed to Folkers during contract negotiations. A diagram was used to show the road's location. Southwest assured Folkers they would take care of the easement. When the proposed access did not come through, defendants Gray and Herman actively pursued an alternative course. They have proposed an unsatisfactory route.

■ The circumstances surrounding the contract and the language used obligates the seller to provide access to this property. Both parties had reason to know that the property was useless to Folkers without direct truck access to the highway. The contract expressly said the "seller" would provide this access. And it is an established rule that a contract is most strictly construed against the party who prepares it. *Huntsman v. Eldon Miller*, 101 N.W. 2d 531, 533 (Iowa 1960). Defendants, with assistance of counsel, prepared this contract.

■ When persons place their agreement in writing, the parol evidence rule forbids the use of extrinsic evidence to vary, add to, or subtract from the agreement. *Tamm, Inc. v. Pildis*, 249 N.W.2d 823, 831 (Iowa 1976). The City's involvement was not a term of the contract. Therefore, the parol evidence rule forbids extrinsic evidence of this condition. "Seller," Southwest Leasing, is responsible for this provision.

II. Defendants contend that the trial court erred by rescinding the contract and awarding money damages to the plaintiff. Plaintiff asserts that rescission is the only equitable remedy available under the circumstances.

A lengthy discussion of rescission of contracts is contained in *Maytag Co. v. Alward*, 253 Iowa 455, 112 N.W.2d 654 (1962). The court approvingly quotes from *Callanan v. Keeseville, Ausable Chasm & L.C. R. Co. (Powers)*, 199 N.Y. 268, 281, 92 N.E. 747, 752 (1910), this general statement:

> There is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case. It is permitted for failure of consideration, fraud in making the

contract, for inability to perform it after it is made, for repudiation of the contract or an essential part thereof, and *for such a breach as substantially defeats its purpose*. It is not permitted for a slight, casual, or technical breach, but, as a general rule, *only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract*. Failure to perform in every respect is not essential, but a failure which leaves the subject of the contract substantially different from what was contracted for is sufficient.

*Maytag*, 112 N.W.2d at 660 (emphasis added).

■ Defendants have breached the contract by failing to provide the driveway and easement to Highway 20. Even if this failure is not willful, it defeats the object of the parties making it. Folkers is not able to conduct his trucking business from this property as was the purpose of the contract and specifically paragraph nine. Because the property without direct truck access is substantially different from what was contracted for, there are sufficient grounds for rescission of the contract.

■ If the party who seeks rescission has an adequate remedy at law, ordinarily rescission is not allowed. However, in the case of a breach going to the root of the contract, unless the damages can be ascertained with reasonable certainty, rescission is a matter of right, with restitution instead of compensation. *Id.*

■ Damages would not be an adequate remedy in this case. Generally, the innocent party is entitled to be placed in the position that would have been occupied had there been performance. *Metropolitan Transfer Station, Inc. v. Design Structures, Inc.*, 328 N.W.2d 532, 535–36 (Iowa App.1987). Performance would have enabled Folkers to move his business to this location. Without the access, the land is of little value to Folkers. Money damages are not adequate under these circumstances.

Defendants argue that this case is distinguishable from previous cases granting rescission since Folkers had fully performed his contract obligations. They further assert that the long lapse of time between the contract date and the filing of the action creates inequities in favor of the defendant that the court cannot ignore.

■ A party who seeks relief by way of rescission must not himself be in substantial default. *Binkholder v. Carpenter*, 260 Iowa 1297, 1308, 152 N.W.2d 593, 600 (1967). It is because Folkers performed that he is entitled to relief. He relied on assurance that the access would be provided and allowed ample time for compliance.

■ Defendants cite *McNair v. Sockriter*, 199 Iowa 1176, 1182, 201 N.W. 102, 105 (1925), to show that the lapse of time plus the general decline of land values in the area resulted in prejudice to them. However, in *McNair*, no action was sought for two and one-half years after appellants had "full actual knowledge" of the state of the record title and the possible legal consequences. The delay in *McNair* was not induced by any efforts of appellees to cure the defect, or any promise to do so. *Id.* Folkers did rely on promises of the defendants. Furthermore, Folkers did not delay once it appeared certain defendants would not be able to fulfill the contract provision. Therefore, defendants have not been prejudiced by the passage of time and equity supports rescission of the contract.

■ Equity requires doing justice to all parties in the action. *McGaffee v. McGaffee*, 244 Iowa 879, 892, 58 N.W.2d 357, 360 (1953). Defendants argue that equity supports specific performance of the contract instead of rescission. Defendants have proposed an alternative access along the southern boundary of Gray's property. Herman has offered to construct a gravel road. Defendants argue this would satisfy the contract.

The object of specific performance is to best effectuate the purpose for which the contract was made. *Janssen v. North Iowa Conference Pensions, Inc. of the Methodist Church*, 166 N.W.2d 901, 907

(Iowa 1969). It should be granted upon such terms and conditions as justice requires. *Id.* We have already established that the parties intended truck access to Folkers' property. The proposed alternate route includes residential streets which prohibit truck traffic. This route would not best effectuate the purpose of the contract.

III. Defendants contend the trial court committed error in its computation of money damages. They make two arguments. First they assert that if specific performance is inadequate, then reformation would provide appropriate damages. But if rescission is determined appropriate, then interest should not be awarded.

■ A. It is well established that one who seeks reformation of a contract contending the instrument does not reflect the real agreement between the parties has the burden of establishing this contention by clear, satisfactory, and convincing proof. *Kufer v. Carson*, 230 N.W.2d 500, 503 (Iowa 1975). "Clear and convincing" requires establishment of facts by more than a preponderance of evidence but by something less than a factual situation beyond a reasonable doubt. *Id.* Facts and circumstances must be sufficiently compelling to constitute an effectual appeal to the conscience of the court and prompt it to interfere by reformation to mitigate the effects of the law. *Id.* at 504.

■ Defendants have not established by clear, satisfying, and convincing proof the mutual mistake alleged. Defendants state that the sales contract and deed were drawn without reference to the understanding of both parties that the City of Waterloo would construct or provide access to this property over the railroad tracks to Highway 20. Instead, the contract and price paid reflect the understanding that seller would do what was necessary to provide for a road easement and a driveway from Highway 20. There is no mutual mistake and we cannot through reformation change the terms of an agreement. *Id.* at 503. Therefore reformation is not appropriate.

B. Rescission in a court of equity seeks to restore the status quo. *Binkholder v. Carpenter*, 260 Iowa 1297, 152 N.W. 2d 593, 596 (1967). The lower court granted Folkers the return of the purchase price paid, property taxes paid, and interest on these sums. This award is equitable as it restores the status quo.

Equity has broad powers in this type of case. Such relief should be granted as will most nearly work substantial justice to all parties. *McGaffee v. McGaffee*, 244 Iowa 879, 58 N.W.2d 357, 360 (1953). Each is to be restored to his former rights and placed in the situation each occupied before the contract was entered into so far as is equitable and reasonably possible. *Kilpatrick v. Smith*, 236 Iowa 584, 19 N.W.2d 699, 705 (1945).

Folkers is entitled to recover back money paid by him. *See* 77 Am.Jur.2d Vendor and Purchaser § 504 (1975). There is authority that the amount recoverable by Folkers is the amount he paid less the benefit he has received. In *Kilpatrick*, 19 N.W.2d at 705, vendees were entitled to recover the full amount of their down payment less one month's rent for the time they occupied the property. The contract was for the purchase and sale of a residential property. Vendees actually occupied the house for one month. *Id.*

Folkers has not been able to use the property in question because of the failure by Southwest to provide access. Folkers has received no benefit for which Southwest should be credited. Instead, Folkers has paid the property taxes and lost the use of his money for a period of years through no fault of his own. As a general rule, under these circumstances the purchaser is entitled to interest on the money paid from the time of payment. 77 Am. Jur.2d Vendor and Purchaser § 508 (1975). Southwest gained the use of these funds and should now restore Folkers to the status quo.

The amount of interest awarded is within Iowa law. Iowa Code section 535.2(2)(a), (3) (1987) allows a vendee under a contract for deed to real property to agree in writing to pay any rate of interest. Interest on judgments or decrees of the court is at ten percent unless a different rate is fixed by contract. *Id.* The contract rate is nine percent compounded semiannually. Interest on the property taxes paid is ten percent from the commencement of the action.

The interest on the purchase money paid goes back to November 30, 1980. It has been asserted that this does not comply with the last sentence of Iowa Code section 535.3: "interest shall accrue from the date of the commencement of the action." However, this Code section does not address pre-filing interest. Since the purpose of rescission is to return the parties to the status quo, a court in equity may adjust the award to accomplish that goal. The time delay in the present case has already been discussed. Folkers relied on assurances by Southwest that the access would be provided. Southwest should not now benefit from this delay in filing the action.

The judgment of the lower court provides an equitable solution. Each party is to be returned to his former position. *Kilpatrick v. Smith*, 236 Iowa 584, 19 N.W.2d 699, 705 (1945). We therefore affirm the lower court's decision to rescind the contract. Folkers is to be compensated for the purchase price, property taxes paid, and interest as determined below.

IV. The final issue is between appellants Southwest Leasing and Roger Herman, and appellees LeRoy and Carolyn Gray. Southwest asserts that the trial court erred in ruling that LeRoy Gray is entitled to indemnification under the stock redemption agreement.

Prior to the stock redemption agreement, all of the assets of the partnership were transferred to the corporation. All of Gray's stock in the corporation was redeemed in exchange for payment of cash and property. As a result, Herman became sole stockholder in Southwest Leasing, Inc. Paragraph fourteen of the stock redemption agreement provides:

*Hold Harmless Agreement*

The Company and Herman agree to hold Gray harmless from any Company debt Gray has personally guaranteed.

Southwest's argument focuses on the meaning of the word "debt" as used in paragraph fourteen. They contend that the judgment rendered is not a debt but a liability and therefore the hold harmless agreement does not apply. Southwest asserts that the language above is clear and unambiguous and there is no need to look beyond the contract to determine the intention of the parties. They cite *McElfresh v. Kinendall*, 36 Iowa 224 (1873), which distinguishes the words debt and liability.

"As applied to pecuniary relations of parties, liability is a term of broader significance than debt. The legal acceptation of debt is a sum of money due by certain and express agreement. Liability is responsibility; the state of one who is bound in law and justice to do something which may be enforced by action." *Id.* at 226 (citations omitted).

The court in *McElfresh* was construing a statute providing for the rights of a married woman. Both words were used in the statute "deliberately and purposefully" to make a distinction in responsibilities between men and women. *Id.* at 227.

In the hold harmless agreement, only the word "debt" was used. Debt was not defined and there was no listing of actual debts to be included. The distinction made in *McElfresh* is not binding upon us. There are "many" definitions for the word "debt" depending upon the facts and circumstances under which it is used. *Wyatt v. Town of Manning*, 217 Iowa 929, 940–41, 250 N.W. 141, 146 (1934). "Given its plainest and most literal signification, the word 'indebtedness' includes every obligation by which one person is bound to pay money, goods, or services to another." Webster's Dictionary definition of "debt" discussed in *Swanson v. City of Ottumwa*, 118 Iowa 161, 170, 91 N.W. 1048, 1051 (1902).

■■■ To determine the meaning of debt in the hold harmless agreement, the court must determine the intention of the parties as revealed by the language used, taken as an entirety, and the situation of the parties, the attendant circumstances, and the objects sought. *Janssen v. North Iowa Conference Pensions Inc. of Method-*

*ist Church*, 166 N.W.2d 901, 904 (Iowa 1969). Parol evidence is admissible to interpret the contract. *Id.* (See part I of this opinion for more discussion of parol evidence.)

■■■ As for the language used, the court should give effect to the language in accordance with its commonly-accepted and ordinary meaning. *Gendler Stone Products v. Laub*, 179 N.W.2d 628, 630 (Iowa 1970). Debt is: 1. something owed by one person to another or others; 2. an obligation or liability to pay or return something; and 3. the condition of owing. Webster's New World Dictionary 364 (2d ed. 1976).

■■■ The circumstances in the case indicate that Gray and Herman intended that Gray would be able to walk away from the company with "no further liability." In exchange, Gray accepted a reduced sale price. The hold harmless agreement was purposefully drafted in general terms so as to be all inclusive. Although disputed, the evidence shows that the potential problem with Folkers was discussed during the negotiations. If the parties had intended to exclude any resulting judgment, then the agreement should have made that clear. The circumstances indicate the parties intended the word "debt" to include all possible claims against the company for which Gray is responsible. This meaning is consistent with the ordinary meaning given to debt. Pursuant to the hold harmless agreement, the lower court's order for judgment against Southwest Leasing and Roger Herman in favor of LeRoy Gray is affirmed.

■■■ In addition, LeRoy Gray has requested indemnification for the legal fees and expenses incurred on appeal. We prefer that the district court determine the reasonable amount of attorney fees that should be awarded on this appeal. Therefore, we remand the case to the district court for the limited purpose of an evidentiary hearing on and the fixing of appellate attorney fees. *See Bankers Trust Compa-*

185

*ny v. Woltz,* 326 N.W.2d 274, 278 (Iowa 1982).

AFFIRMED AND REMANDED.